**Gary L. ANDERSON, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 3:01–CV–422–J–21–HTS.

United States District Court,
M.D. Florida,
Jacksonville Division.

June 3, 2002.

Stephen B. Gallagher, Marks, Gray, P.A., Jacksonville, FL, for Plaintiff.

Reginald Luster, U.S. Attorney's Office, Jacksonville, FL, Gregg A. Cervi, U.S. Department of Justice, Gregory P. Belanger, U.S. Department of Justice, Washington, DC, for Defendant.

## ORDER

NIMMONS, District Judge.

Filed herein is Defendant's Motion to Dismiss (Dkt. 4), Plaintiff's response in opposition thereto (Dkt. 7), and Defendant's reply (Dkt. 16).

## I. GENERAL BACKGROUND

In this matter, Plaintiff, Gary L. Anderson[1], a civilian, sues Defendant,

---

1. Plaintiff's name in the caption of the Complaint (Dkt. 1) appears to be inaccurate ac-

United States of America, for injuries caused when an FA–18C military aircraft—which was launched from the aircraft carrier, USS John F. Kennedy ("Kennedy")—released two bombs during a training exercise at Vieques Island, Puerto Rico on April 19, 1999. The bombs missed their intended target on the bombing range and, instead, impacted near the Cerro Matias Observation Post at the Atlantic Fleet Weapons Training Facility where Plaintiff was working for a civilian contractor. As a result, Plaintiff incurred the injuries giving rise to this lawsuit.

Plaintiff alleges Defendant was negligent in the bombing incident. First, because Defendant failed to provide adequate physical protection on the ground for personnel working in the Cerro Matias Observation Post despite a number of recent "close calls" prior to the incident giving rise to this lawsuit. Additionally, Plaintiff claims that the pilot of the aircraft was negligent in releasing the bombs because he failed to visually sight his proper target before releasing the ordnance. Last, Plaintiff alleges that the Range Control Officer ("RCO"), who is on the ground at the bombing range, acted negligently because he violated regulations by authorizing the bombs' release before he visually sighted the aircraft.

Approximately twenty-three months after the bombing incident, on March 21, 2001, Plaintiff filed a claim with the Naval Legal Services Office, Mid–Atlantic, Norfolk, VA, ("NLSO"), which was denied on April 10, 2001. Thereafter, on April 18, 2001, Plaintiff filed this lawsuit. Plaintiff's first count is brought under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 ("FTCA"). Alternatively, and only if the FTCA is inapplicable, Plaintiff pleads three counts: Count II under the Suits in

cording to his Affidavit (Dkt. 7, Exh. A) wherein Plaintiff is identified as Gary W. Andersen.

Admiralty Act, 46 U.S.C. app. §§ 741—752 ("SAA"); Count III under the Public Vessels Act, 46 U.S.C. app. §§ 781—790 ("PVA"); and Count IV under the Extension of Admiralty Jurisdiction Act, 46 U.S.C. app. § 740 ("EAJA").

The allegations relied upon in each of the four claims is the same: (1) the United States owed a duty to Plaintiff to refrain from inflicting harm or injury to him; (2) the United States breached that duty to Plaintiff by negligently failing to provide Plaintiff a safe work environment and by negligently causing two bombs to be dropped from a military aircraft onto Plaintiff's work site; and (3) as a result of such breach, Plaintiff suffered physical and mental injuries. (Dkt. 1). Defendant filed this Motion to Dismiss under Rule 12(b)(1), Federal Rules of Civil Procedure, arguing that Plaintiff's Complaint must be dismissed with prejudice because this Court lacks subject matter jurisdiction over Plaintiff's lawsuit because Plaintiff did not comply with pre-suit requirements.

## II. RULE 12(b)(1) MOTION TO DISMISS STANDARD

 Because this Motion to Dismiss is before the Court under Rule 12(b)(1), the Plaintiff's allegations are not presumed to be true. As the Eleventh Circuit explained:

Attacks on subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) come in two forms. **"Facial attacks"** on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511

(5th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)). "**Factual attacks,**" on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*

These two forms of attack differ substantially. On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true. *Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). But when the attack is factual, the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Id.* at 412–13 (quoting *Mortensen,* 549 F.2d at 891).

*Lawrence v. Dunbar,* 919 F.2d 1525, 1528–29 (11th Cir.1990) (emphasis added). Explained another way,

a Rule 12(b)(1) motion can serve either purpose. If it simply challenges the sufficiency of the allegations of subject matter jurisdiction, then the pleading's contents are taken as true for purposes of the motion. However, if it challenges the actual existence of subject matter jurisdiction, then the pleading's allegations are merely evidence on the issue. Since the party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction regardless of the pleading's allegations, the courts have held that the pleader must establish jurisdiction with evidence from other sources, such as affidavits or depositions. The general rule, therefore, is that a pleading's allegations of jurisdiction are taken as true unless denied or controverted by the movant. Thus, if the movant fails to contradict the pleader's allegation of subject matter jurisdiction in his motion to dismiss under Rule 12(b)(1), then he is presumed to be challenging the pleading's sufficiency under Rule 8(a)(1), and the allegations of the pleading pertaining to jurisdiction are taken as true. But if the movant, either in his motion or in any supporting materials, denies or controverts the pleader's allegations of jurisdiction, then he is deemed to be challenging the actual existence of subject matter jurisdiction, and the allegations of the complaint are not controlling.

\* \* \* \* \* \*

The court will not accept as true allegations that are contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading. On the other hand, the allegations of the pleading will be supplemented by any relevant matter that can be judicially noticed or by the contents of any exhibits attached to the pleading or any matter validly incorporated by reference.

5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1363 (2d e.1990).

When Defendant has challenged jurisdiction, the burden of proving that this Court has subject matter jurisdiction over this claim remains upon Plaintiff. *Id.* at § 1350. Plaintiff may rebut Defen-

dant's assertion by providing the Court with evidence that jurisdiction is proper and that the claim is not frivolous. *Id.* In determining whether jurisdiction is proper, the Court must weigh the merits of what is presented by the parties. *Id.* The Court is free to review and weigh the evidence presented by both parties that is outside the four corners of the complaint. The Court, having reviewed both the arguments and evidence presented by both parties, determines that this Motion to Dismiss challenges the basis of subject matter jurisdiction and, as such, is a factual challenge.

### III. PARTIES' ARGUMENT ON THE MOTION TO DISMISS

Defendant seeks dismissal of Plaintiff's first count, brought under the FTCA, because the waiver of sovereign immunity granted by the FTCA does not encompass "[a]ny claim for which a remedy is provided by [the PVA or SAA] relating to claims or suits in admiralty against the United States" 28 U.S.C. § 2680(d). Defendant further cites to the EAJA, which extends admiralty jurisdiction to claims such as those in this case, wherein it provides:

[A]s to any suit against the United States for damage or injury done or consummated on land by a vessel on navigable waters, the Public Vessels Act or Suits in Admiralty Act, as appropriate, shall constitute the exclusive remedy for all causes of action arising after June 19, 1948 . . . .

46 U.S.C. app. § 740. Consequently, Defendant argues that because Plaintiff's claim is required to be brought under the PVA or SAA, it may not be raised under the FTCA.

With regard to Plaintiff's three additional alternative admiralty counts, Defendant asserts that these counts must be dismissed as time-barred under the EAJA,

which Defendant asserts is applicable to this matter. The EAJA provides:

[N]o suit shall be filed against the United States until there shall have expired a period of six months after the claim has been presented in writing to the Federal agency owning or operating the vessel causing the injury or damage.

*Id.* Essentially, by requiring a party suing the United States to wait six months after filing a claim in writing, the EAJA cuts short the PVA and SAA's two-year statute of limitations by six months. A party seeking to sue the United States under the PVA or SAA must meet all requirements including filing an administrative claim within the first eighteen months after such injury occurred or be time-barred from pursuing his or her claim. Therefore, Defendant seeks dismissal of all counts.

Plaintiff asserts that the application of admiralty law is improper; first, because land based bombing does not have a potential to affect maritime activities. Defendant counters this assertion by stating that it routinely publishes notices to mariners "to warn of potential threats to maritime traffic" when conducting "training flight operations in coastal waters." (Dkt. 5, Exh. 2 at ¶ 8). Moreover, Defendant submits the Manual for the Use of the Atlantic Fleet Weapons Training Facility, which provides that the bombing range is closed for two hours per day, two days per week, to "permit local fishermen to retrieve fishing traps from adjacent waters." (Dkt. 16, Exh. 5).

Plaintiff further submits that all negligence was land-based (the RCO's failure to visually sight the aircraft before giving the pilot authorization to drop the bombs) or air-based (the pilot's failure to visually sight the target area before dropping the bombs), but not water-based. As support for his position, Plaintiff submits his own declaration stating that he previously

worked for nine years as a RCO at the bombing range on Vieques Island and has worked various additional capacities at the range since 1981; thus Plaintiff is very familiar with the manner in which bombing training operations are conducted at the range. (Dkt. 7, Exh. A at ¶ 1). Plaintiff asserts that all "ordinance [sic] materials utilized during training operations are required to be dropped on land" (*Id.* at ¶ 4) and that the aircraft was "under the direct and exclusive control of the [RCO] located at the Cerro Matias Observation Post." (*Id.* at ¶ 6). Furthermore, according to Plaintiff, the RCO improperly allowed the bombs to be dropped in violation of regulations requiring that he "visually sight each aircraft before providing authorization to drop ordinance [sic]." (*Id.* at ¶ 10).[2] Moreover, Plaintiff asserts that the aircraft involved did not return to the Kennedy, but landed at the U.S. Naval Station Roosevelt Roads, Puerto Rico. (*Id.* at ¶ 13).

Defendant disputes Plaintiff's assertions that the pilot or the RCO controlled the FA–18C military aircraft; rather, Defendant maintains that the aircraft is attached to and is equipment assigned to the Kennedy and was merely operated by the pilot. (Dkt. 5, Exh. 2). The RCO, according to Defendant, does not control aircraft using the bombing range, but only controls the range itself; thus, the RCO's role is limited to communicating that the range is either clear or not clear. (Dkt. 16, Exh. 6). Nevertheless, the "RCO's primary responsibility is safety"; moreover, he is not to let "perceived pressure to complete scheduled operations interfere with safety considerations." (*Id.*, Exh. 4 at ¶ 5) (emphasis omitted).

Defendant further asserts that the aircraft remained under the control of the Kennedy at all times. In support of its assertion, Defendant offers the declaration of Captain Clay Sayers, USN, wherein he declares that the military aircraft involved in the April 19, 1999 incident belonged to Marine Fighter/Attack Squadron Two–Fifty–One, which was assigned to the Kennedy and was, at all times, operationally and administratively controlled by the personnel aboard the Kennedy. (Dkt. 5, Exh. 2; Dkt. 16, Exh. 3). Plaintiff has not countered this evidence that the aircraft was assigned to the Kennedy.

Defendant further maintains that, while the pilot of the aircraft is responsible for the "safe, orderly flight of the aircraft[,]" his mission is set forth before leaving the ship and, unless the safety of the aircraft is affected, cannot be altered except by a "higher authority[.]" (Dkt. 16, Exh. 3). Capt. Sayers also states that the F/A–18C was launched from and, after a delay caused by the bombing incident, was eventually recovered aboard the Kennedy. According to Capt. Sayers, this aircraft and its ordnance are examples of the Kennedy's primary offensive and defensive weapons. Moreover, the aircraft aboard the Kennedy are "an extension of the ship's ears (electronic monitoring), eyes (surveillance), and provide offensive and defensive capability (air-to-air combat and air-to-ground strike)." (Dkt. 5, Exh. 2 at ¶ 6).

## IV. ADMIRALTY JURISDICTION

The Court first turns to Defendant's assertion that this case may not be brought under the FTCA because it is an admiralty action required to be brought under the PVA or SAA.[3] In determining

---

**2.** Plaintiff did not attach such regulations to his affidavit.

**3.** For purposes of this Motion to Dismiss, the distinctions between the PVA and SAA are irrelevant as both require a plaintiff to abide by the jurisdictional requirements in the AEJA.

whether this lawsuit falls under admiralty jurisdiction, the Court applies the traditional location and maritime connection tests set forth by the United States Supreme Court in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995).

> A court applying the location test must determine whether the tort occurred on navigable water or whether injury **suffered on land was caused by a vessel on navigable water.**

*Id.* (citing EAJA, 46 U.S.C. app. § 740) (emphasis added).

## A. Location Test

■ It is undisputed that the injuries claimed herein were suffered on land, not on navigable water. Therefore, in determining whether admiralty law applies, the Court must determine whether the injuries were caused by the Kennedy, which was a vessel on navigable water, or an appurtenance to the Kennedy.[4] If the FA–18C which dropped the bombs that injured Plaintiff is an appurtenance of the Kennedy, then admiralty law applies.

Neither party has cited, nor has the Court found, authority which directly addresses the issue of whether a military aircraft is an appurtenance of the aircraft carrier to which it is attached. The determination of what is an appurtenance to a ship has long troubled courts.[5]

Nevertheless, a recent decision of the Southern District of Florida provides guidance on the definition of appurtenance. *Gonzalez v. M/V Destiny Panama*, 102 F.Supp.2d 1352, 1354–57 (S.D.Fla.2000) (collecting cases). The *Gonzalez* court addressed the issue of whether replacement engines, purchased by the owner of the vessel and stored in a terminal yard within the judicial district, were appurtenances to a vessel which had been arrested for a maritime lien. Prior to the arrest, the engines had been purchased to replace engines which were installed but did not function. The *Gonzalez* court found that the replacement engines were appurtenances by reviewing case law and determining that "[n]either installation, location, nor ownership is dispositive" of whether an item is an appurtenance. *Id.* at 1356. The court determined that the item must be

---

**4.** It is settled that "maritime law ... ordinarily treats an 'appurtenance' attached to a vessel in navigable waters as part of the vessel itself." *Grubart*, 513 U.S. at 535, 115 S.Ct. 1043.

**5.** In *The Frolic*, the Rhode Island District Court stated:

> It may not be a simple matter to define what is, and what is not, an appurtenance of a ship. There are some things that are universally so—things which must be appurtenant to every ship, qua ship, be its occupation what it may. But I think it is rather gratuitously assumed that particular things may not become so from their immediate and indispensable connection with a ship in the particular occupation to which she is destined and in which she is engaged.
> * * * * * *
> The word "appurtenances" must not be construed with a mere reference to the abstract naked idea of a ship, for that which

would be an encumbrance to a ship one way employed would be an indispensable equipment to another; and it would be a preposterous abuse to consider them alike *in such different positions.* You must look to the relation they bear to the actual service of the vessel.

*The Frolic*, 148 F. 921, 922 (D.R.I.1906) (internal quotes and citations omitted). The court went on to find that a chronometer, while not usually appurtenant to a schooner, was, nevertheless, an appurtenance in that instance because it was necessary to that particular schooner for a particular purpose on a particular journey.

"specifically identifiable" and must be "destined for use aboard a specifically identifiable vessel" and, furthermore, must be "essential to the vessel's navigation, operation, or mission." *Id.See also United States v. Dewey,* 188 U.S. 254, 268, 23 S.Ct. 415, 47 L.Ed. 463 (1903) (finding that a vessel's appurtenances include armament and other equipment which supported the ship's "operations"); *Gowen, Inc. v. F/V Quality One,* 244 F.3d 64, 67 (1st Cir.2001) (finding that fishing permits, although intangible, were appurtenances to fishing vessel because essential to vessel's purpose).

The Plaintiff argues that, even if the military aircraft were an appurtenance when embarked upon the Kennedy, it ceased to be an appurtenance upon leaving the Kennedy. As support, Plaintiff cites the following cases for this proposition: *Kinsella v. Zim Israel Navigation Co., Ltd.,* 513 F.2d 701 (1st Cir.1975) (plywood owned by vessel and used as dunnage to separate cargo during shipping was not appurtenance after being removed from vessel, stored on shore, and subsequently placed over railroad by shore-based workers to facilitate use of a forklift); *Crotwell v. Hockman–Lewis Ltd.,* 734 F.2d 767 (11th Cir.1984) (air compressor damaged in hold of vessel by improper packing and later causing injury to a construction worker on land was not an appurtenance after being removed); and *Miller v. A/B Svenska Amerika Linien,* 454 F.2d 1094 (3rd Cir.1971) (bucket used for water on board vessel was not an appurtenance after removal when it leaked and the resulting puddle caused injury on land). The Court finds that these cases are all distinguishable in that the item causing the injury had been used for a particular purpose aboard the vessel and was no longer fulfilling that purpose when it caused the injury giving rise to the lawsuit.

In the instant case, the military aircraft had not been "removed" from the ship by the ship's controllers. Rather, it is clear from a review of the record that the FA–18C was assigned to the Kennedy and was on a mission to bomb land based targets. This mission was initiated specifically on behalf of the Kennedy. The aircraft was not an independent craft, but was assigned, attached to, and operating from the Kennedy.

██ Based on the undisputed facts in the record, the Court finds that the military aircraft—the FA–18C—was an appurtenance to the Kennedy at the time of the incident. While flying a mission from the Kennedy, the aircraft dropped the bombs which caused the damage to Plaintiff. Damage caused by an appurtenance to a vessel is deemed to have been caused by the vessel. Therefore, the injuries giving rise to this lawsuit were caused by a vessel on navigable waters and thus the maritime location requirement is fulfilled.

**B. Maritime Connection Test**

██ With regard to the maritime connection or "nexus" test, the Court must first determine whether "the incident involved was of a sort with the potential to disrupt maritime commerce." *Grubart,* 513 U.S. at 538, 115 S.Ct. 1043. Next, it must determine whether "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.*

██ It is clear from a review of the record that bombing activities at the Vieques bombing range has the potential to significantly disrupt maritime commerce. For example, the range must close twice weekly for fishing vessels to gather their catch from traps nearby. This incident meets the first prong of the nexus test.

Next, the Court determines that the Kennedy's general activities demonstrate a substantial relationship to traditional maritime activity. For example, the Kennedy's activities—specifically, navigating a carrier in the world's navigable waters and running flight operations in which aircraft armed with ordnance are launched at sea—are clearly sufficient to potentially affect traditional maritime activities. Moreover, even assuming that the RCO or the pilot's acts contributed to the damage sustained to Plaintiff, *Grubart* makes it clear that the Court need

> look only to whether one of the arguably proximate causes of the incident originated in the maritime activity of a tortfeasor: as long as one of the putative tortfeasors was engaged in traditional maritime activity the allegedly wrongful activity will "involve" such traditional maritime activity and will meet the second nexus prong.

*Id.* at 541, 115 S.Ct. 1043. The involvement of the pilot or RCO is not sufficient to remove this case from the admiralty jurisdiction. The Court finds that the incident herein sufficiently involves traditional maritime activity.

Finding that this is a case arising in admiralty, this lawsuit may not be brought under the FTCA and may be maintained appropriately only as an admiralty case under the PVA or the SAA. Accordingly, Plaintiff's Count I is due to be dismissed.

## V. EXTENSION TO ADMIRALTY JURISDICTION ACT ("EAJA")

With regard to Plaintiff's remaining counts in admiralty, in order to bring his suit under either the PVA or the SAA—both of which have a two-year statute of limitations—Plaintiff must first comply with the jurisdictional requirements under the EAJA for filing suit against the United States. *Turner Terminals v. United States,* 177 F.2d 844, 846 (5th Cir.1949)[6] (dismissing an action where the plaintiff had failed to first file administrative claim).

The EAJA requires that an administrative claim be filed with the responsible federal agency. *Id.* Next, the EAJA includes the jurisdictional requirement that the plaintiff wait six months after filing an administrative claim to file a lawsuit. *See Rashidi v. Amer. Pres. Lines,* 96 F.3d 124 (5th Cir.1996) (EAJA's requirement that a written claim be presented six months before suit is filed is jurisdictional); *Loeber v. Bay Tankers, Inc.,* 924 F.2d 1340 (5th Cir.1991) (same); *Turner,* 177 F.2d at 846 (same); *Weatherford v. United States,* 957 F.Supp. 830 (M.D.La.1997) (finding that an administrative claim filed six days before the expiration of the two-year statute of limitations and a lawsuit filed six months after receipt of denial was not sufficient to equitably toll the statute of limitation in the SAA); *Pacific Bell v. United States,* 636 F.Supp. 312 (N.D.Cal. 1986) (holding plaintiff's claim time-barred under EAJA because it must wait six months after filing administrative claim before filing suit and granting summary judgment); *cf. T.J. Falgout Boats, Inc. v. United States,* 508 F.2d 855 (9th Cir.1974) (SAA two-year period of limitations is jurisdictional and cannot be tolled). This six-month requirement effectively shortens the two-year statute of limitations to eighteen months because a plaintiff must wait six months, but must still file within two years. *Hahn v. United States,* 218 F.Supp. 562, 567 (E.D.Va.1963); *Loeber,* 924 F.2d at 1343.

---

6. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions rendered by the former Fifth Circuit prior to October 1, 1981.

Defendant seeks dismissal of Plaintiff's alternative admiralty claims because Plaintiff filed his administrative claim twenty-three months after the incident and did not await the statutory six months prior to filing suit against the United States. Plaintiff asserts that dismissal of his case would be improper and beyond the purpose and intent of the AEJA. Plaintiff does not dispute that he failed to await the additional six months before filing this lawsuit.

Plaintiff insists that this failure is not relevant because the purpose of the six-month waiting period was to allow the Government time to consider the claim and to avoid unnecessary and expensive litigation. (Dkt. 17 at 14) (citing *Carr v. United States*, 136 F.Supp. 527 (E.D.Va.1955); 1948 U.S.Code Cong. Serv., 1898). Moreover, Plaintiff contends that his actions were proper in that he followed the spirit of the law, if not the letter of the law, because he filed his administrative claim and waited for the claim to be denied prior to filing this lawsuit. Plaintiff asserts that, once his claim was denied, he was free to file suit.

Plaintiff attempts to distinguish his case from cases such as *Pacific Bell v. United States*, 636 F.Supp. at 314–15. In *Pacific Bell*, a plaintiff claimed that the United States Navy had negligently dropped an anchor on an underwater telephone cable. The plaintiff filed an administrative claim with the Navy twenty-two months after the anchoring incident caused the damage. The Navy denied the claim less than two months later. Immediately upon receipt of the denial notice, the plaintiff filed suit under the SAA. The plaintiff's lawsuit was filed within the SAA's two-year statute of limitations. The plaintiff, however, failed to await the expiration of the six-month period before filing the lawsuit as required by the EAJA.[7] The Navy moved for summary judgment because the plaintiff had failed to meet the jurisdictional requirements of suing the United States under the EAJA. The district court granted summary judgment in favor of the United States.

Plaintiff attacks the reasoning of the *Pacific Bell*, court stating that court did not provide a well-reasoned opinion on the issue presented and incorrectly relied upon a previous district court case, *Hahn v. United States*, 218 F.Supp. 562 (E.D.Va. 1963), which addressed the issue of whether the filing of an administrative claim with the federal agency tolled the two-year statute of limitations. Plaintiff states that, in the instant case, he is not seeking a ruling that the statute is tolled; rather, Plaintiff seeks a ruling that, once the NLSO denied his claim, he was free to file suit. Plaintiff reasons that the purpose of the EAJA had been served by putting Defendant on notice and by giving Defendant time to consider the claim before it.

The Court finds that *Pacific Bell* and the instant case are factually and legally similar and that the reasoning explicated in *Pacific Bell* is persuasive. The two cases are factually similar in that both plaintiffs claim that the United State Navy negligently caused harm which resulted in damages on land. Both plaintiffs filed administrative claims more than eighteen months after the date of the incident causing the damage, and, then, after the claims were denied, both plaintiffs, although filing their lawsuits before the two-year limitation period in the SAA and PVA, filed such lawsuits less than six months after the filing of their administrative claims—in the case of plaintiff Pacific Bell, two months

---

7. The plaintiff in *Pacific Bell* did not dispute the applicability of the EAJA to its claim, i.e. agreeing that the damage or injury in that case was done or consummated on land. *Pacific Bell*, 636 F.Supp. at 313.

and in the case of Plaintiff Anderson, four weeks.

The plaintiff's legal arguments in *Pacific Bell* mirror the arguments set forth herein by Plaintiff Anderson. Both assert that the six-month waiting period should be ignored when the claim has been denied because such waiting period serves no purpose once the claim has been denied. Moreover, both maintain that the government—by denying the claim—clearly had time to consider such claim; therefore the six-month waiting period is not relevant because such waiting period was intended merely to allow the government time to settle claims and avoid litigation. In both cases, the government promptly denied the administrative claim—in less than two months in *Pacific Bell,* and in less than one month in the instant case.

As previously stated herein, the EAJA's preclusion of a lawsuit earlier than six months from the presentation to the appropriate federal agency is jurisdictional. *E.g. Loeber,* 924 F.2d at 1342. Further, as stated in pertinent part by the *Pacific Bell* court:

> The Hahn court based its holding on general principles of sovereign immunity. It recognized that "[i]t is well settled that when the sovereign consents to be sued, 'the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" [218 F.Supp. at 565] (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)).
>
> \*　\*　\*　\*　\*　\*
>
> When the language of a waiver of sovereign immunity clearly imposes a condition upon a plaintiff's right to sue the government, a court may not disregard that condition. [The EAJA] unambiguously requires a plaintiff to wait six months after filing a claim before filing suit.
>
> \*　\*　\*　\*　\*　\*
>
> [N]othing in the legislative history or the language of the statute suggests that denial of a claim relieves a plaintiff from the six month waiting period, Pacific Bell's argument merely suggests that the Congress should have drafted a narrower provision that would have served the primary purpose of [the EAJA]. With respect to other waivers of sovereign immunity, Congress has indeed drafted narrower provisions. Under the Federal Tort Claims Act, for example, a plaintiff may file suit as soon as the relevant agency has denied his or her claim and "[t]he failure of an agency to make a final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim...." 28 U.S.C. § 2675(a) (1976). Nevertheless, it is not the province of this Court to redraft the terms upon which the Congress waives the sovereign immunity of the United States Government.

*Pacific Bell,* 636 F.Supp. at 314–15.

The *Pacific Bell* court did not strictly rely on the reasoning in the *Hahn* case, as Plaintiff asserts, but relied heavily on the language of the EAJA. Finding that the plain language of the statute required the court to find that the plaintiff had failed to meet the requirements of the EAJA, the court determined that it lacked jurisdiction to entertain the lawsuit and entered summary judgment for the defendant. This Court agrees and finds that Defendant is entitled to dismissal as hereinafter provided.

As set forth above, Plaintiff filed his claim with Defendant in March 2001, approximately twenty-three months after the incident occurred. Thereafter, Plaintiff filed this lawsuit in April 2001, less than a month after filing the written claims with Defendant but before the two-

year time limitation provided in the PVA and SAA. Nevertheless, Plaintiff failed to meet the requirements of the EAJA by filing his administrative claim within eighteen months of the incident giving rise to this lawsuit. This failure is fatal to his claim. The resulting denial by the NLSO does not operate to waive this requirement for Plaintiff. Thus, Defendant is entitled to the dismissal of Plaintiff's Counts II, III, and IV arising in admiralty.

Although the proper application of the controlling authorities may be severe, nevertheless, the plain language of the EAJA needs no further interpretation and must be complied with strictly for an admiralty case to be maintained against the United States for damages on land caused by a vessel in navigable water.

## VI. CONCLUSION

With regard to dismissing a complaint with prejudice, the general rule in the Eleventh Circuit is that where a "more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir.1991). Two exceptions exist: (1) where the plaintiff expresses a desire not to amend his or her complaint; and (2) where "a more carefully drafted complaint could not state a claim under the standard of *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99, dismissal with prejudice is proper." *Id.* In the instant case, no purpose would be served by allowing Plaintiff to amend his Complaint because it is apparent that even a more carefully drafted complaint would fail to state a claim under the FTCA or the EAJA.

Upon consideration of the foregoing, it is hereby **ORDERED**:

1. Defendant's Motion to Dismiss (Dkt. 4) is **GRANTED** and the Complaint is **DISMISSED with prejudice.**

2. The Clerk is **DIRECTED** to close this case and terminate all pending motions, if any, and delete this case from the roll of pending cases.