**In the Matter of WATERFRONT LICENSE CORPORATION d/b/a Club Jet Ski and Anthony P. Aiello, as Owners Pro Hac Vice of 2000 Polaris Virage Jet Ski, Vessel Identification No. PLE 02864J900, at the Time of the Alleged Incident Praying for Exoneration from or Limitation of Liability, Petitioners.**

No. 03–80967–CIV.

United States District Court,
S.D. Florida.

April 19, 2005.

David Frank Pope, Fowler, White, Boggs, Banker, Tampa, FL, Jill Anne Hillman, Monroe & Zinder PC, Los Angeles, CA, for plaintiffs.

Kenneth Jay Sobel, Greenspoon Marder Hirschfeld, Rafkin Ross & Berger, Fort Lauderdale, FL, for defendants.

## FINAL ORDER OF DISMISSAL

ZLOCH, Chief Judge.

THIS MATTER is before the Court upon Claimants Gerald Clay Baynham, Estate of Jacob Dollar and John Dollars' Joint Motion To Dismiss For Lack Of Subject Matter Jurisdiction (DE 26). The Court has carefully reviewed said Motion and the entire court file and is otherwise fully advised in the premises.

### I. Background

On May 6, 2001, twenty year old Jacob Dollar (hereinafter "Decedent") together with his father, John Dollar, chartered two jet skis from Petitioner Waterfront License Corp. d/b/a Club Jet Ski (hereinafter "Waterfront" or "Petitioner Waterfront").[1] After approximately forty-five minutes of riding their respective jet skis, Jacob Dollar collided

---

1. Unless otherwise noted, the above-mentioned facts are taken from Petitioners' Complaint–In– Limitation. *See* DE 1.

with a boat owned and operated by Gerald Clay Baynham (hereinafter "Mr. Baynham" or "Claimant Baynham"). Jacob Dollar died as a result of the collision and Mr. Baynham's vessel was damaged and foundered.

Thereafter, by letter dated April 14, 2003, Kenneth J. Sobel, Esq. (hereinafter "Mr. Sobel") counsel for John and Beth Dollar, co-personal representatives of the Estate of Decedent, wrote Waterfront, as the owner pro hac vice of the aforementioned jet ski, a Notice of Claim (hereinafter "First Notice of Claim"). *See* DE 26, Ex. A. The April 14, 2003 First Notice of Claim stated:

> Dear Waterfront License Corporation:
>
> Please be advised that this office represents John and Mary [sic] Dollar, in a cause arising from the death of their son, Jacob Dollar, who sustained injuries as a result of a boating incident on the above-referenced date.
>
> In the spaces below, please indicate the name of your insurance company and all other relevant information. In the event that you do not have liability insurance to cover this accident, please indicate so in the appropriate space.
>
> Failure to respond to this letter may result in a lawsuit being filed against you in Palm Beach County Circuit Court, wherein we will seek to hold you individually responsible for all the damages sustained by our client. Enclosed, please find, for your convenience, a stamped self-addressed envelop for the return of this letter with the enclosed information.
>
> Very Truly Yours,
>
> s/Kenneth Sobel

Petitioners deny receiving the First Notice of Claim, though it was sent by certified mail to Waterfront's principal place of business and signed for by Jeff Azzaro, an employee of Waterfront. *See id.* at Ex. B. Petitioners also deny responding to the First Notice of Claim, despite Claimants' proffer of a copy of the returned First Notice of Claim, faxed to the office of Mr. Sobel from Petitioner Waterfront, representing that Petitioner Water-

front had no liability coverage. *See id.* at Ex. G. This unsigned fax contained no other information. *See id.*

Likewise, by letter dated April 25, 2003, Mr. Sobel wrote Petitioner Aiello, president of Waterfront and owner pro hac vice of the aforementioned jet ski, a Notice of Claim (hereinafter "Second Notice of Claim"). *See id.* at Ex. C. The April 25, 2003 Second Notice of Claim stated:

> Mr. Aiello:
>
> The undersigned has been retained by Beth and John Dollar, as the co-personal representatives of the estate of Jacob Dollar in a claim for personal injuries arising out of a jet ski accident which occurred on the above referenced date. We note from the Marine Homicide Report that you had an insurance policy . . . .
>
> Pursuant to Florida Statute 627.4137, undersigned counsel hereby requests, within thirty (30) days of the date of this request, a statement, under oath of a corporate officer, setting forth the following information with regard to each known policy of insurance, including excess or umbrella insurance.
>
> . . . .
>
> Should you have any questions, please feel free to contact me at your earliest convenience.
>
> Very truly yours,
>
> GREENSPOON, MARDER, HIRSCHFELD,
>
> RAFKIN, ROSS & BERGER, P.A.
>
> KENNETH J. SOBEL, ESQ.
>
> BRADLEY A. ROSS, ESQ.

Petitioners also deny receiving the Second Notice of Claim, which was, again, sent by certified mail to Waterfront's principal place of business and signed for by Waterfront employee Jeff Azzaro. *See id.* at ex. D. However, Petitioners do acknowledge receiving a Third Notice of Claim, dated April 28, 2003, which was identical in all material aspects to the Second Notice of Claim and which was also addressed to Petitioner Aiello. *See* DE 28, Ex. 1.[2]

---

2. All Notices were sent to the same address: 311 E. Blue Heron Blvd, Rivera Beach, Florida 33404. *See* DE 28, Exs. 1–3. This address was

the principal place of business of Waterfront. The first two notices were sent by United States certified mail, return receipt requested. These

On October 21, 2003—more than six months after the delivery of the April 14th, 2003 First Notice of Claim, but less than six months after the delivery of the April 25, 2003 Second Notice of Claim and the delivery of the April 28, 2003 Third Notice of Claim—Waterfront and Anthony Aiello (hereinafter "Petitioners") initiated the above-styled cause by filing a Complaint For Exoneration Or For Limitation Of Liability (hereinafter "Complaint–In–Limitation") (DE 1). Therein, Petitioners—as the owners of the 2000 Polaris Virage Jet Ski operated by the Decedent at the time of the aforementioned collision—sought exoneration, or a limitation in their liability to the value of the jet ski, pursuant to 46 App. U.S.C. § 185 and Rule F(1) of the SUPPLEMENTAL RULES FOR CERTAIN ADMIRALTY AND MARITIME CLAIMS (hereinafter "SUPPLEMENTAL RULE F(1),")[3] for damages arising out of the accident. See DE 1.

On August 12, 2004, the Court entered an Order (DE 8) ordering Petitioners to publish a notice, via a newspaper of general circulation, to inform all persons with potential claims arising from the aforementioned collision to file their respective claims by Friday, September 10, 2004 or be barred from bringing a claim.[4] Thereafter, timely claims were filed by both John and Beth Dollar, individually and as co-personal representatives of the Estate of Jacob Dollar, as well as by Mr. Baynham. See DE Nos. 10 and 14.

In the instant Motion (DE 26), John Dollar, individually and on behalf of the Estate of the Decedent, and Gerald Clay Baynham argue, pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1), that the Court lacks subject matter jurisdiction over the above-styled cause because the Complaint–In–Limi-

tation (DE 1) is time barred by 46 App. U.S.C. § 185 and SUPPLEMENTAL RULE F(1). Petitioners, in turn, proffer four arguments that the Court has subject matter jurisdiction over the above-styled cause. See DE· 29. Petitioners first argue that the instant Motion (DE 26) is untimely. Petitioners next argue that the Court must dismiss the instant Motion (DE 26) because Claimants impermissibly rely on extrinsic evidence. Third, Petitioners argue that Claimants are erroneously seeking to convert the instant Motion (DE 26) into an improper Motion for Summary Judgment. Finally, Petitioners argue that even if the Court converts the instant Motion (DE 26) into a Motion For Summary Judgment, there are genuine issues of material fact that preclude the entry of judgment as a matter of law. More specifically, as to this final argument, Petitioners argue that their Complaint–In–Limitation (DE 1) was timely filed and that the letter dated April 14, 2003 was not a valid notice of claim because it was never received by Petitioners.[5]

## II. Applicable Law

### A. Standard Of Review

A motion to dismiss based on lack of subject matter jurisdiction can be raised at any time. Baker Oil Tools, Inc. v. Delta S.S. Lines, Inc., 562 F.2d 938, 940 (5th Cir.1977).[6] In fact, "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." FED. R. CIV. P. 12(h)(3). The instant Motion (DE 26) suggests the Court may lack subject matter jurisdiction over the above-styled cause. Therefore, Petitioners' claim that 12(b) motions filed "post-answer" are untimely is without merit.[7]

return receipts bear the signature or initials of Waterfront employee Jeff Azzaro.

3. The Jet Ski in question is valued at approximately $2,000. See DE 6.

4. The Court later enlarged this period until September 24, 2004. See DE 12.

5. Petitioners do not argue that the contents of the aforementioned notices of claim were insufficient to place them on notice of a pending action, but rather that they never received the notices in question at all.

6. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

7. In any event, Claimant Baynham's Answer (DE 25) to the Complaint–In–Limitation (DE 1) raises, as an affirmative defense, the possibility of the Court's lack of subject matter jurisdiction due to the Petitioners' filing of their Complaint–In–Limitation (DE 1) beyond the sixth month limitation

Petitioners' second, third and fourth arguments can be addressed concomitantly and are equally without merit. In effect, Petitioners' argue that the Court cannot consider extrinsic evidence in resolving the instant Motion (DE 26) without erroneously converting said Motion into a Motion for Summary Judgment. However, Petitioners continue, in the event the Court does consider extrinsic evidence—and thereby ostensibly turns the instant Motion to Dismiss into a Motion for Summary Judgment—there are genuine issues of material fact that would preclude judgment as a matter of law. In response, Claimants' argue that Petitioners "wholly miss the boat" in their analysis because, in ruling on a 12(b)(1) factual challenge to subject matter jurisdiction, the Court is free to consider extrinsic evidence outside the Complaint to determine its power to hear the case. The Court agrees with the Claimants for the reasons set forth below.

■ As an initial matter, the Court notes that it is "extremely difficult to dismiss a claim for lack of subject matter jurisdiction." *Simanonok v. Simanonok*, 787 F.2d 1517, 1519 (11th Cir.1986). Attacks on subject matter jurisdiction made pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) come in two varieties: "facial attacks" and "factual attacks." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir.1990). Facial attacks on the complaint require a court to scrutinize the pleadings and determine whether the plaintiff has sufficiently alleged subject matter jurisdiction and the allegations in the complaint are taken as true. *Id.* at 1529. Conversely, factual attacks challenge the existence of subject matter jurisdiction in fact, regardless of the pleadings. *Id.* When considering a factual attack, therefore, those matters that go beyond the pleadings, such as affidavits and testimony, are to be considered. *Id.*

■ In a factual attack, a court's power to make findings of facts and to weigh the evidence turn on whether the factual attack on jurisdiction also implicates the merits of the plaintiff's cause of action. *Id.* In *Lawrence v. Dunbar*, 919 F.2d at 1528–29, the

Eleventh Circuit Court of Appeals noted that if the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action, then:

> [t]he trial court may proceed as it never could under 12(b)(6) or FED.R.CIV.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims.

■ In contrast, if an attack on subject matter jurisdiction also implicates an element of the cause of action, then the district court should find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case. *Id.* In such instances, the defendant is forced to proceed under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) or FEDERAL RULE OF CIVIL PROCEDURE 56, both of which place severe restrictions on a court's discretion. *Id.*

■ Here, because the instant Motion (DE 26) simply raises a jurisdictional issue and does not seek to address the underlying merits of the instant action, it involves a factual, and not a facial, attack. *See, e.g., Wepfer Marine, Inc.*, 344 F.Supp.2d 1120, 1123, (W.D.Tenn.2004) (treating a motion to dismiss as a factual attack for the purpose of addressing whether a limitation action was timely filed); *Anderson v. United States*, 245 F.Supp.2d 1217, 1221 (M.D.Fla.2002) (dismissing suit pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) for lack of subject matter jurisdiction because of non-compliance with statutory timing requirements); *UFO Chuting of Hawaii*, 233 F.Supp.2d 1254, 1256–57 (D.Hawai'i 2001) (treating a motion to dismiss for lack of subject matter jurisdiction as a factual attack for the purpose of addressing whether a limitation action was timely filed); *Kiewit Pacific Co.*,

period prescribed by 46 App. U.S.C. § 185 and

SUPPLEMENTAL RULE F(1).

1994 WL 446967, at * 2–4 (N.D.Cal.) (treating a motion to dismiss for lack of subject matter jurisdiction as a factual attack for the purpose of addressing whether a limitation action was timely filed). Therefore, no presumptive truthfulness attaches to Petitioners' allegations and the existence of disputed facts will not preclude the Court from evaluating for itself the merits of Petitioners' jurisdictional claim. The Court is also free to consider the extrinsic evidence properly before it.

### B. The Limitation of Liability Act

■ The Limitation of Liability Act of 1851, 46 App. U.S.C. §§ 181–95 (amended 1936) (hereinafter the "Act") was Congress' effort to provide American shipowners with benefits equal to those of foreign competitors. See Paradise Divers, Inc. v. Upmal, 402 F.3d 1087, 1089–90 (11th Cir.2005) (citing Vatican Shrimp, Co. v. Solis, 820 F.2d 674, 677 (5th Cir.1987)). Under the Act, a vessel owner can restrict its liability arising from any occurrence for which the vessel is liable to the value of the vessel and its freight. See 46 App. U.S.C. § 185. A vessel owner may file a petition for limitation of liability in federal court pursuant to 46 App. U.S.C. § 185.[8] That Section states:

> [t]he vessel owner, within six months after a claimant shall have given to or filed with such owner written notice of claim, may petition a district court of the United States of competent jurisdiction for limitation of liability ... and the owner (a) shall deposit with the court, for the benefit of claimants, a sum equal to the amount or value of the interest of such owner in the vessel and freight ....

SUPPLEMENTAL RULE F(1) also provides that a complaint for limitation of liability must be filed in the appropriate district court not later than six months after receipt of a claim in writing. The purpose of the six month prescription on the limitation of liability petition is to require the shipowner to act promptly to gain the benefit of the statutory right to limit liability. Diamond v. Beutel,

247 F.2d 604, 607 (5th Cir.1957). Given this purpose, the six month time limit is strictly enforced. Paradise Divers, Inc., 402 F.3d at 1089–90; Cincinnati Gas & Electric Co. v. Abel, 533 F.2d 1001, 1005 (6th Cir.1976). In this matter, the Court must determine whether delivery of the First Notice of Claim to Petitioner Waterfront constitutes the "giv[ing] to" or "fil[ing] with" of written notice as required by 46 App. U.S.C. § 185.

Claimants argue that Petitioners received the First Notice of Claim on April 15, 2003 and that their Complaint–In–Limitation (DE 1) is untimely pursuant to 46 App. U.S.C. § 185 and SUPPLEMENTAL RULE F(1) because it was filed six months and one week later, on October 21, 2003. Petitioners, in turn, claim they only received the Third Notice of Claim, dated April 28, 2003, and that their Complaint–In–Limitation (DE 1), filed on October 21, 2003 was, therefore, timely. More specifically, Petitioners first argue that they were not served the First or Second Notices of Claim in compliance with federal and state law regarding service of process. Second, Petitioners argue that the employee who received the First Notice of Claim, Jeff Azzaro, never brought said Notice to their attention.

■ As an initial matter, the Court notes that according to the plain language of 46 App. U.S.C. § 185, the vessel owner is the person to whom the written notice of claim must be given, or with whom it must be filed. See Diamond, 247 F.2d at 607. Precedent dictates, however, that a notice of claim may be received by an agent of the vessel owner. See id. However, an agent must have sufficient authority to receive notice in order to trigger the six month statutory limit promulgated by the Act. See id.; see also Doxsee Sea Clam Co. v. Brown, 13 F.3d 550, 553–54 (2d Cir.1994).

■ Petitioners first argue that federal and state service of process law governs the delivery of a notice of claim in admiralty. They then claim that because Claimants did not serve the First Notice of Claim in accordance with federal and state law, the First

---

**8.** The Eleventh Circuit Court of Appeals has found that a jet ski is a "vessel" and, therefore, falls under the statutory ambit of the Act. See Keys Jet Ski, Inc., 893 F.2d 1225, 1230 (11th Cir.1990). This Court is bound by that decision.

Notice of Claim is insufficient to trigger the six month statutory limitation of 46 App. U.S.C. § 185. In support of this proposition, Petitioners cite *Diamond v. Beutel*, 247 F.2d at 605–607.[9] The Court finds that *Diamond* does not bear Petitioners' interpretation. While that case may hold that a vessel owner may appoint an agent to receive notice in an admiralty case, like he might appoint an agent to receive service of process, neither that case nor the Act mandate that a notice of claim be served according to the FEDERAL RULES OF CIVIL PROCEDURE, which permits deference to state service of process law. *See Diamond*, 247 F.2d at 607; *see also Cincinnati Gas*, 533 F.2d at 1005 ("Any ambiguity in the amended version of [the Act] should be resolved in favor of permitting full recoveries and requiring strict adherence to the statutory requisites for limited liability.").

■ Petitioners next argue that the Waterfront employee who received the First Notice of Claim did not notify them of its existence. Consequently, Petitioners argue, they were not notified under 46 App. U.S.C. § 185 of a pending claim. Thus, Petitioners conclude, they cannot be held responsible for failing to file a complaint-in-limitation within six months of a notice of claim of which they were unaware and which they never technically received.

■ The Court finds this argument unconvincing. As noted, Claimants were required to either "give[ ] to" or "file[ ] with" Waterfront, as the owner of the vessel in question, a written notice of claim in order to trigger the six months statutory provision of 46 App. U.S.C. § 185. The certified mail receipt attached to the instant Motion (DE

26, Ex. B) shows that Claimants complied with the terms of the Act by having said Notice delivered to Waterfront on April 15, 2004; whereupon, it was received by an employee of Waterfront.[10] The unrefuted evidence of Waterfront being given the First Notice of Claim is bolstered by Claimants' proffer of a copy of the returned First Notice of Claim, faxed to the office of Mr. Sobel from Petitioner Waterfront, representing that Petitioner Waterfront had no liability coverage.[11] *See* DE 26, Ex. G. Because Petitioners were given the First Notice of Claim on April 15, 2003, they had until October 15, 2003 to file a complaint-in-limitation in order to avail themselves of the statutory protection of 46 App. U.S.C. § 185. Because the Compliant–in–Limitation (DE 1) was not filed until October 21, 2003, and since compliance with the six month limitation for petitioning for limitation is jurisdictional, the Court lacks subject matter jurisdiction over this cause.

Finally, because the First Notice of Claim was accurately addressed and delivered to Petitioner Waterfront's principal place of business, where it was received by a Waterfront employee, the Court does not deem it necessary to analyze the issue of Jeff Azzaro's status as Petitioner Waterfront's agent. However, to the extent Azzaro's agency status is relevant to the instant inquiry, the Court conducts the following analysis. First, the Court notes that it is well established that the agent of a vessel owner can receive a notice of claim in the vessel owner's stead. *E.g.*, *Doxsee*, 13 F.3d at 554 (finding that letter from claimant's attorney to vessel owner's insurance adjuster was sufficient to trigger the six month statutory prescription of

9. In *Diamond*, 247 F.2d at 605–607, the owner of a vessel involved in an accident referred claims to his insurance agent. *Id.* A claimant then filed a written notice of claim with the aforementioned agent. *Id.* The vessel owner later argued that the notice was never "given to or filed with" him as required by the statute. *Id.* The Fifth Circuit Court of Appeals noted that there is "nothing preventing a vessel owner from appointing an agent to receive the notice, as he might do for the service of process." That Court then quoted Rule 4(d)(1)—now 4(d)(3)—of the FEDERAL RULES OF CIVIL PROCEDURE, which permits service to "an agent authorized by appointment." Finally, the Court held that "the written notice of claim given to or filed with the agent designated

by the owner established the time from which the six months' limitation period started to run." *Id.*

10. The Court also notes in passing the rebuttable presumption that an item properly mailed was received by the addressee. *See Konst v. Florida East Coast Railway Co.*, 71 F.3d 850, 851 (11th Cir.1996).

11. Petitioners claim ignorance as to the origin of the above-mentioned fax. They note that, though it clearly came from their place of business, it is unsigned and contains incorrect information as Waterfront actually does carry liability insurance.

46 App. U.S.C. § 185 because vessel owner had clothed insurance adjuster with apparent authority); *Diamond,* 247 F.2d at 607 (noting that "the written notice of claim given to or filed with the agent designated by the owner established the time from which the six months' limitation period started to run"); *Kiewit Pacific, Co.,* 1994 WL 446967 at *3 (noting that when claimant sent notice to vessel owner's attorney to notify plaintiff of a pending claim, attorney was vessel owner's agent and when the claimant notified the attorney, he notified the vessel owner); *Beesley's Point Sea–Doo, Inc.,* 956 F.Supp. 538, 543 (D.N.J.1997) (finding that evidence in limitation of liability proceeding supported conclusion that insurer of owner of personal watercraft had apparent and actual authority to accept notice of personal injury claim against owner). Of course, an agent must have authority to receive notice in order to trigger the six month statutory limit promulgated by the Act. *See Diamond,* 247 F.2d at 607; *see also Doxsee,* 13 F.3d at 553–54.

■ Second, though Petitioners contend otherwise in their pleadings, it is clear that as an employee Jeff Azzaro was an agent of Waterfront. *See Goldsmith v. City of Atmore,* 996 F.2d 1155, 1162 (11th Cir.1993) ("An employee is generally considered an agent of his or her employer."). Moreover, the Affidavit (DE 28) of Waterfront president Anthony Aiello clearly establishes that Mr. Azzaro was more than a mere mechanic. By virtue of working the Waterfront phones, handling certain aspects of the paperwork, maintaining the personal watercraft—such as jet skis like the one in question—and servicing walk-in customers, Mr. Azzaro was authorized to perform a broad range of duties on behalf of Waterfront. *See* DE 28, ¶ 19. Thus, to the extent Mr. Azzaro's agency status is relevant, and given the fact that he performed general operational duties on behalf of Waterfront, the Court finds that he had the implied authority necessary to receive the April 14, 2003 letter containing the First Notice of Claim and that he had the duty to pass said letter to the proper corporate authority. In short, delivery of the First Notice of Claim upon Waterfront's agent, Mr. Azzaro, was, in effect, delivery of the First Notice of Claim upon Petitioner Waterfront.

### III. *Conclusion*

In sum, the Court lacks subject matter jurisdiction over the above-styled cause because Petitioners filed their Complaint–In–Limitation (DE 1) beyond the sixth month limitation period prescribed by 46 App. U.S.C. § 185 and SUPPLEMENTAL RULE F(1) and initiated by Petitioners' receipt of the First Notice of Claim. Petitioners' argument that federal and state service of process law governs the delivery of a notice of claim in admiralty is without merit. Likewise, Petitioners' argument that they technically did not receive the First Notice of Claim is unconvincing. Thus, the Court deems it proper to grant the instant Motion (DE 26).

Accordingly, after due consideration, it is **ORDERED AND ADJUDGED** as follows:

1. Claimants Gerald Clay Baynham, Estate of Jacob Dollar and John Dollars' Joint Motion To Dismiss For Lack Of Subject Matter Jurisdiction (DE 26) be and the same is hereby **GRANTED** and the above-styled cause be and the same is hereby **DISMISSED**; and

2. To the extent not disposed of herein, all pending motions are hereby **DENIED** as moot.