WILLIAM RICHARDSON *vs.* FREEMAN CLARK & *al.*

A bill of sale of the hull of a vessel with all and singular her tackle, apparel and furniture, does not include a chronometer on board at the time, where no agreement of the parties, or custom of merchants, in relation to it, is made to appear.

EXCEPTIONS from the Court of Common Pleas, REDINGTON J. presiding.

The verdict was for the defendants, and the plaintiff excepted to the instructions given to the jury. The facts in the case will be found in the opinion of the Court, as will also the ruling of the Judge of the Court of Common Pleas.

*F. Allen* and *Randall* argued for the plaintiff. They cited *Shannon* v. *Owen,* 1 *Manning & Ry.* 392; *Farrar* v. *Stackpole,* 6 *Greenl.* 154.

*Mitchell* and *Tallman* argued for the defendants.

The case was continued for advisement, and the opinion of the Court was afterwards drawn up by

EMERY J. — On the 6th day of *September,* 1836, *Freeman Clark,* by *William D. Sewall,* and *William D. Sewall,* by bill of sale of that date, " in consideration of $3400, bargained and sold to the plaintiff one half of all the hull or body of the good brig *Pliades,* together with one half of all and singular her tackle, apparel and furniture, as she arrived at *Philadelphia,* and her cargo discharged, now at *Philadelphia.* To have and to hold, the said granted and bargained one half of said brig *Pliades,* and premises, with the ap- purtenances unto the said one half belonging; covenanting to war- rant and defend the said one half of said brig *Pliades* and appurte- nances against the lawful claims of all persons."

This action is assumpsit to recover half the value of a chronom- eter charged in an account annexed to the writ, at $200. The chronometer had been screwed down to the transom of the vessel and was taken therefrom after her arrival, but remained on board until after the discharge of the cargo, and then was carried to a nautical instrument maker in *Philadelphia* for the purpose of being rated. Capt. *Robinson,* the master of the brig, originally purchased the

article in *France,* without any orders from the owners. He sold it to one Capt. *Welch,* and there was evidence to shew that Capt. *Welch* purchased it, as defendants' agent. But soon after by *Welch's* order it was taken to *Bath,* and was never again on board the brig. The purchase from *Robinson* was prior to the date of the bill of sale.

It was a controverted point whether, if defendants were the purchasers they ever appropriated the article to the use of the brig, or designed it for some other purpose. Evidence of the acts and declarations of the parties before and after the time of the conveyance was introduced, to shew what was the usage as to chronometers passing by such a bill of sale. No usage in this particular could be proved. The whole matter was submitted to the jury with instruction to which the exceptions are taken.

In *Beawes' Lex Mercatoria, page* 74, it is said to be held, that a bill of sale, specifying a ship, her tackle, apparel and furniture, will not pass her boat ; for so little is it considered as appertaining to the vessel, that in a forfeiture for piracy, the boat is not involved, for the perfect use of the ship may be enjoyed without her boat ; it is for this reason, that ballast is not included under the description of furniture, for a vessel not only may, but when sufficiently laden does, in general sail without it ; therefore where a bond was given on the sale of a vessel, conditioned for the undisturbed enjoyment of her and her furniture, it was held not to be forfeited, because a third person sued the purchaser for money due for ballast bought by the seller for the use of the ship, in which action the plaintiff recovered, in consequence of which the vessel was seized. The ballast is neither the vessel nor her furniture. *Rolls. Abr.* 50 ; 1 *Moll. de Ju. Ma. p.* 313, *sec.* 8 ; *Lenter's Case, Leon,* 46, 47 ; *Abbott on Ship.* 9.

To promote peace and security, " the precision of law requires that all conveyances should actually express the matter to be transferred." Yet general terms which have received a fixed and technical meaning may be employed, so that no misapprehension need arise. In using general terms the parties would be supposed to intend to embrace whatever was essential in the subject of conveyance and its beneficial enjoyment, according to its nature and design. When a fixed and technical meaning is not appropriated to

the language used, the intention of the parties should be submitted to a jury. *Duffee* v. *Mason*, 8 *Cowen*, 25 ; *Farrar* v. *Stackpole*, 6 *Greenl.* 154.

A policy of insurance on ship and furniture has been held to include provisions sent out in the ship for the use of the crew and were to be paid for by the underwriter against fire, though they took fire in a ware-house called a Bank Saul. And *Justice Buller* observed, that where losses have been settled, the provisions on board the vessel when she sailed have been considered part of the ship. *Brough* v. *Whittmore*, 4 *Term Rep.* 206. In *Haskins* v. *Pickersgill*, cited in *Marshall on Insurance*, 727, *Lord Mansfield* said, that in an insurance on the ship and furniture, &c. there was no doubt but that the boats and rigging and stores belonging to the ship were included. And as to the fishing stores, it must depend on the usage of trade. Under the denomination goods, wares and merchandize in the policy, the Captain's clothes, the ship's provisions and goods lashed to the deck are not comprehended. *Marshall*, 319, 727. In *Ross* v. *Hunter*, *Park on In.* 20, it is said they should be insured by name.

In the case of *Brough* v. *Whittmore*, 4 *Term Rep.* 206, *Buller Justice*, is represented to have said, that a policy of assurance has at all times been considered in courts of law as an absurd and incoherent instrument; but it was founded in usage, and must be governed and construed by usage.

In one case a policy against fire was upon the body, tackle, apparel, ordnance, munitions, artillery, boat and other furniture of and in said ship. 1 *Burrow*, 341. The sails, yards, tackle, cables, rigging, apparel, and other furniture belonging to the *Onslow* on which the insurance was made were consumed by fire in a ware-house called a Bank Saul. And the underwriters were holden. This is referred to for the purpose of shewing that the boat was specially named. It would have been well for both parties to have named the chronometer if it was intended to be sold. A boat, cable and anchor were held to be attachable, if the vessel were at the wharf, and her cable, anchor and boat not in use, *Parker J.* saying, there seems to be no reason why they may not as well be taken, as the harness of a carriage, or the sails and rigging of a vessel, when separated from the hull and laid up on shore. To take

a boat or a cable and anchor from a vessel, when they are in use and necessary to the safety of the vessel, would expose the party to damages. *Briggs & al.* v. *Strange,* 17 *Mass. R.* 405. Bills of sale have not yet been spoken of judicially as absurd and incoherent instruments. We are to give the present one a just construction according to its terms and the intention of the parties. *Dolan* v. *Briggs,* 4 *Binney,* 496.

It has been said by *Pigott* and *Marryat,* that though in some instances the courts of law have enlarged the terms of mercantile contracts in order to meet the general ideas of merchants, yet there is no instance in which they have narrowed the construction of them.

The case of *Freeman* v. *Baker,* 5 *Barn.* and *Adolphus,* 797, and 27 *Com. Law Rep.* 194, is one in which no particular liberality of construction is adopted as to the extent of a warranty of a vessel.

In the present case, the instruction was, " that the burden of proof was upon the plaintiff to satisfy them, that half the property in the chronometer passed to the plaintiff by the bill of sale under one of the terms, tackle, apparel, furniture, or appurtenances. That as the chronometer is of recent introduction into nautical use, neither of those terms would of its own force, necessarily embrace the article. That it was therefore incumbent on the plaintiff to shew by the acts and declarations of the parties that they intended it to pass by the bill of sale ; or that by usage among mercantile men such articles do pass, by the bill of sale, under the circumstances in which this article was placed, at the time of making the conveyance to the plaintiff."

A chronometer designed to discover the longitude at sea, seems to be particularly appropriate to the service of the master to aid him in navigating the vessel, as much as his quadrant, or watch, or scale and dividers. And the circumstance that the box containing the chronometer had been secured to the transom and removed, though it was on board when the cargo was discharged, would no more authorize the Court to consider it an essential part of the brig or essential to its beneficial enjoyment, than the watch or the quadrant in like circumstances. The case shews that the jury could not find from the acts and declarations of the parties that it

was intended to pass by the bill of sale. And the usage that it should so pass was not proved. The opinion of one witness, as reported, though drawn forth by the defendants, cannot affect the case. It established no usage. We do not intend to decide but what in the improvements of nautical science chronometers may become necessary appurtenances to ships. But as the case is presented, we perceive nothing erroneous in the ruling and instruction of the Judge, and therefore overrule the exceptions.

*Judgment on the verdict.*