## THE FROLIC.

(District Court, D. Rhode Island. December 7, 1906.)

### No. 1,132.

1. ALIENS—FORFEITURE OF VESSEL FOR VIOLATION OF CHINESE EXCLUSION ACT—APPURTENANCES.

In Chinese Exclusion Act May 6, 1882. c. 126, § 10, 22 Stat. 61 [U. S. Comp. St. 1901, p. 1309], which provides that "every vessel whose master shall knowingly violate any provisions of this act shall be deemed forfeited to the United States and shall be liable to seizure and condemnation." etc., the word "vessel" is broad enough to include the vessel's tackle, apparel, furniture, and appurtenances.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Aliens, § 97.]

2. SHIPPING—APPURTENANCES OF VESSEL.

A chronometer supplied on account of the owners of a schooner as a necessary part of her equipment for a special service, although not in general a necessary part of her equipment, is to be regarded as appurtenant to the ship, and as included in the term "ship" or "vessel."

3. ALIENS—FORFEITURE OF VESSEL FOR VIOLATION OF CHINESE EXCLUSION ACT—OWNERSHIP OF APPURTENANCES.

A chronometer, which is one of the appurtenances of a vessel seized under Chinese Exclusion Act May 6, 1882, c. 126. § 10, 22 Stat. 61 [U. S. Comp. St. 1901. p. 1309], for a willful violation of such act by the master, is not exempt from forfeiture because of the fact that it is not the property of the owners of the vessel, but was leased to them by the owner to be used as a necessary part of the vessel's equipment.

In Admiralty. In re claim of William Bond & Son.

Chas. A. Wilson, U. S. Atty.

Henry G. Vaughan, for claimants.

BROWN, District Judge. The chronometer claimed as their property by William Bond & Son was on the schooner Frolic when seized for violation of the Chinese exclusion acts. The Frolic, her boats, tackle, apparel and furniture, were condemned under the following provision of the statutes:

"Sec. 10. That every vessel whose master shall knowingly violate any of the provisions of this act shall be deemed forfeited to the United States, and shall be liable to seizure and condemnation in any district of the United States into which such vessel may enter or in which she may be found." Act May 6, 1882. c. 126, 22 Stat. 61; Act July 5, 1884, c. 220, 23 Stat. 117; Act Sept. 13, 1888, c. 1015, 25 Stat. 476; Act May 5, 1892, c. 60. 27 Stat. 25. See U. S. Comp. St. 1901, pp. 1309, 1312, 1319; Act April 29, 1902, c. 641, 32 Stat. 176 [U. S. Comp. St. Supp. 1905, p. 295].

The term "vessel," in said act, is broad enough to include the schooner's tackle, apparel, furniture. and appurtenances. The Manilla Prize Cases, 188 U. S. 254, 268, 269, 270, 23 Sup. Ct. 415, 47 L. Ed. 463.

The claimants contend that vessels of the size of the Frolic (48.5 feet long over all) do not usually carry chronometers; that a chronometer was not a part of the Frolic's usual equipment; and "that the determination of what are fittings, tackle, and appurtenances of a vessel depends on the vessel itself, its size, type and design, and what

such a vessel, per se, calls for to make her complete in fittings, tackle, and appurtenances, and does not depend and is not determined by what may be found aboard, or what her officers may use or provide themselves with, however much and whatever their convenience or the performance of their duties may require."

In Abbott's Merchant Ships and Seamen (14th Ed.), p. 33, Lord Stowell's remarks in The Dundee, 1 Hag. Adm. 109, are quoted:

"'It may not be a simple matter to define what is, and what is not, an appurtenance of a ship. There are some things that are universally so—things which must be appurtenant to every ship, qua ship, be its occupation what it may. But I think it is rather gratuitously assumed that particular things may not become so from their immediate and indispensable connection with a ship in the particular occupation to which she is destined and in which she is engaged.' And again: 'The word "appurtenances" must not be construed with a mere reference to the abstract naked idea of a ship, for that which would be an incumbrance to a ship one way employed would be an indispensable equipment in another; and it would be a preposterous abuse to consider them alike in such different positions. You must look to the relation they bear to the actual service of the vessel.'"

If we are to look to the relation which this chronometer was intended by its owners, William Bond & Son, to bear to the actual service of the vessel, the terms of hiring as set forth in the following document are significant:

"Received of Wm. Bond & Son, on account of vessel and owners, in good order, a chronometer, name, Bliss & Creighton, No. 1234, value one hundred dollars, on hire, for the use of which we jointly and severally promise to pay to them at and after the rate of five dollars per 6 weeks, without any deduction, for any cause whatever, until the said chronometer shall be returned to them, or until they shall be served with a protest of the loss, if any, of the same.

"The said chronometer is to be used on board the good and seaworthy Sch. called the Frolic, registered in Boston, whereof H. F. Colby is master and H. F. Colby and others are owners, and bound for Labrador, and is to be returned to the same Wm. Bond & Son, without expense to them, and without charge or claim for salvage or general average, at the expiration of the present voyage, or within 2 months from the date hereof, in the same good order as received. Insured by Sch. Frolic and owners, against unavoidable damage or total loss by fire or water, while on said vessel at sea. All and every other risk or risks whatever are taken by the undersigned.

"Sch. Frolic and Owners, by Herbert F. Colby.

"Boston, Aug. 27, 1906.          Individually and as Master."

It hardly can be doubted that for a voyage to Labrador a chronometer was essential, and that it was supplied by the claimants on account of vessel and owners.

Under some circumstances a chronometer may be regarded as "appropriate to the service of the master to aid him in navigating the vessel, as much as his quadrant, or watch, or scale, or divider." Richardson v. Clark, 15 Me. 421. Were a case presented where the master of a vessel took aboard his own chronometer and his own nautical instruments, it might, perhaps, be held that they did not become appurtenances of the ship, but rather appertained to the master and his service to the ship. In such a case I should hesitate long before declaring such personal possessions used in the performance of a personal service to be appurtenances of a ship. But where such instruments

are supplied on account of the owners of a vessel, as a necessary part of her equipment for a special service, then it seems to me that they should be regarded as appurtenant to the ship, and as included in the term "ship" or "vessel." Abbott's Merchant Ships and Seamen (14th Ed.) 34, 280.

Nor does it seem essential that the absolute title to the articles furnished as a part of the equipment of the vessel for the particular service should be in the owners of the vessel. I am aware that, in some of the definitions of the term "appurtenances," the words "belonging to the owners" are used. Doubtless the question of title may be of importance in determining whether an article has become an appurtenance of a ship, just as in the law of fixtures it may be important in determining the real or constructive annexation of articles to a freehold. But the reservation of title is not necessarily inconsistent with the grant of such rights of use in furtherance of the service of the vessel as makes an article an appurtenance of the ship, as distinguished from an instrument appertaining to the personal service of the navigating officer.

In The Witch Queen, 3 Sawy. 201, Fed. Cas. No. 17,916, it was held that a lien of materialmen extended to a diving bell, air pump, and other apparatus belonging to the owners, not required for nor used in navigating the ship, but indispensable for the accomplishment of the particular voyage she was about to enter upon. Assuming that, had the owners hired a diver to furnish his personal services and his own diving apparatus, such apparatus might not be considered an appurtenance of the vessel, but rather as appertaining to the personal service of the diver, yet a still different question would be presented if the owners themselves supplied for the enterprise diving apparatus hired by them from its owner, who consented to its use as a part of the vessel's general outfit.

In United States v. 220 Patented Machines, (D. C.) 99 Fed. 559, machinery leased to a cigar manufacturer was forfeited to the United States, and it was said of the lessor:

"He takes the risk, therefore, that the manufacturer will conduct the business according to law; and, if the risk falls out against him, he cannot be heard to set up his own ignorance of the manufacturer's illegal conduct, or his own ignorance of unlawful intent."

It is well settled that, under forfeiture statutes like the one in question, the guilt or innocence of the owners of the property is immaterial. Dobbin's Distillery v. U. S., 96 U. S. 395, 24 L. Ed. 637; U. S. v. Stowell, 133 U. S. 1, 10 Sup. Ct. 244, 33 L. Ed. 555; U. S. v. One Black Horse (D. C.) 129 Fed. 167. There is no greater hardship in a forfeiture of an appurtenance belonging to an innocent owner than in the forfeiture of the body of a ship belonging to an innocent owner.

The question before us is whether the claimants have shown that this chronometer, found aboard the Frolic, was not a part of her appurtenances. The claim alleges merely that they are the owners of the chronometer. This is not enough to avoid a forfeiture; for the question of title becomes immaterial, if they have in fact consented

to its use as an appurtenance of the vessel. Such consent sufficiently appears, and makes the chronometer part of the vessel for the purposes of forfeiture.

The claim of William Bond & Son is denied and dismissed.