**Gary L. ANDERSON, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 02–14258
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Jan. 7, 2003.

Sonya Harrell Hoener, Stephen B. Gallagher, Marks Gray, P.A., Jacksonville, FL, for Plaintiff–Appellant.

Gregg Anthony Cervi, Debra J. Kossow, U.S. Dept. of Justice, Washington, DC, for Defendant–Appellee.

Before ANDERSON, BLACK and WILSON, Circuit Judges.

PER CURIAM:

Gary L. Anderson[1] appeals the district court's order dismissing his complaint with prejudice. He asserts that (1) his claim against the United States did not arise in admiralty and thus was properly brought under the Federal Tort Claims Act (FTCA); and (2) even if his claim arose in admiralty, his failure to comply with the jurisdictional requirements of the Extension of Admiralty Jurisdiction Act (EAJA) should not be fatal to his claim. For the reasons set forth below, we affirm.

## BACKGROUND

Anderson is a civilian employee of ITT Federal Services Corp., a contractor of the United States. ITT is located at the Cerro Matias Observation Post at the Atlantic Fleet Weapons Training Facility (AFWTF). On April 19, 1999, the USS John F. Kennedy launched an armed F/A–18C aircraft while conducting a training exercise at Vieques Island, Puerto Rico. The aircraft released two bombs aimed at the AFWTF range. The bombs missed the intended target and impacted near the Cerro Matias Observation Post on the AFWTF range, thereby injuring Anderson.

On March 21, 2001, Anderson submitted a written claim seeking damages for his injuries with the Naval Legal Services Office, Mid–Atlantic. The claim was denied on April 10, 2001. Thereafter, on April 18, 2001, Anderson filed a complaint in district court under the FTCA and, alternatively, under the Suits in Admiralty Act (SAA), the Public Vessels Act (PVA), and the EAJA. In each claim, he alleged that the United States negligently failed to provide a safe working environment for him by causing two bombs to be dropped near his work site, and, as a result, he suffered physical and mental injuries. Subsequently, the United States filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1), challenging the basis of subject matter jurisdiction, and the district court granted the motion to dismiss with prejudice. This appeal followed.

---

**1.** The official caption of this case lists Gary L. Anderson as the plaintiff. We note, however, that the plaintiff identifies himself as Gary W. Andersen.

## STANDARD OF REVIEW

We "[u]ndertak[e] a *de novo* review of the district court's dismissal for lack of subject matter jurisdiction." *Ambassador Factors v. Rhein–, Maas–, Und See–Schiffahrtskontor GMBH*, 105 F.3d 1397, 1398 (11th Cir.1997).

## DISCUSSION

The United States Constitution authorizes federal courts to hear "all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2, cl. 1. "Congress has embodied that power in a statute giving federal district courts 'original jurisdiction ... of ... [a]ny civil case of admiralty or maritime jurisdiction....'" *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995) (alterations in original) (quoting 28 U.S.C. § 1333(1)). Moreover, in 1948 Congress enacted the EAJA, which extends admiralty jurisdiction to "include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." 46 U.S.C. app. § 740. In such cases, however, "the Public Vessels Act or Suits in Admiralty Act, as appropriate, shall constitute the exclusive remedy for all causes of action arising after June 19, 1948." *Id.*

## I.

Anderson contends that his claim against the United States did not arise in admiralty, and, therefore, it was proper under the FTCA. The FTCA's waiver of sovereign immunity excludes "[a]ny claim for which a remedy is provided by [the PVA or SSA], relating to claims or suits in admiralty against the United States." 28 U.S.C. § 2680(d). Thus, if admiralty jurisdiction exists for Anderson's claim, it cannot be brought under the FTCA. *See id.*

To determine whether a claim falls under admiralty jurisdiction, the United States Supreme Court enunciated two tests, which address the location where the injury occurred and the incident's connection to maritime activity. *Jerome B. Grubart, Inc.*, 513 U.S. at 534, 115 S.Ct. 1043.

> [Under] the location test[, a court] must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water.... [Under the connection test, a] court, first, must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.

*Id.* (citations omitted) (internal quotation marks omitted). We turn first to the issue of location.

## A.

To satisfy the location test, we must determine whether the injuries Anderson suffered were caused by the Kennedy. *See id.*[2] As stated earlier, the aircraft, which was stored on the Kennedy, released the bombs that injured Anderson. "[M]aritime law ... ordinarily treats an 'appurtenance' attached to a vessel in navigable waters as part of the vessel itself." *Id.* at 535, 115 S.Ct. 1043; *see also Victory Carriers, Inc. v. Law*, 404 U.S. 202, 210–11, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971) (finding admiralty jurisdiction for injuries "caused by an appurtenance of a ship"). Therefore, we must determine whether the aircraft is an appurtenance to the Kennedy.

---

**2.** Neither party disputes that the injuries alleged herein occurred on land.

To determine whether an item is an appurtenance to a vessel, we "must look to the relation [it] bear[s] to the actual service of the vessel." *In re Frolic,* 148 F. 921, 922 (D.R.I.1906) (internal quotation marks omitted). The Southern District of Florida recently defined an appurtenance as "any specifically identifiable item that is destined for use aboard a specifically identifiable vessel and is essential to the vessel's navigation, operation, or mission." *Gonzalez v. M/V Destiny Panama,* 102 F.Supp.2d 1352, 1354–57 (S.D.Fla.2000) (discussing cases dealing with appurtenances); *see also United States v. Dewey,* 188 U.S. 254, 268, 23 S.Ct. 415, 47 L.Ed. 463 (1903) (finding that the words " 'ship or vessel of war' include[ ] her armament . . . [and] everything . . . on board the ship in aid of her operations"); *Gowen, Inc. v. F/V Quality One,* 244 F.3d 64, 67–71 (1st Cir.), *cert. denied,* 534 U.S. 886, 122 S.Ct. 196, 151 L.Ed.2d 138 (2001) (finding that fishing permits were appurtenances to a vessel because they were essential to the vessel's purpose).

■ Neither party disputes that the aircraft was on a mission to bomb targets on the AFWTF range. Moreover, in his declaration, Captain Clay Sayers of the United States Navy maintained that the aircraft was assigned to the Kennedy[3] and that its operations were controlled by personnel aboard the Kennedy at all times. Captain Sayers also declared that "[e]m-

barked aircraft and their ordnance are the carrier's primary offensive and defensive weapons. . . . The aircraft are an extension of the ship's ears (electronic monitoring), eyes (surveillance), and provide offensive and defensive capability (air-to-air combat and air-to-ground strike)." Thus, the aircraft was assigned to the Kennedy, specifically, and, when conducting the bombing exercises, the aircraft was carrying out the Kennedy's mission by testing its offensive and defensive capabilities in air-to-ground strikes. Accordingly, we find that the aircraft was an appurtenance to the Kennedy at the time of Anderson's injuries.[4] As injuries caused by an appurtenance to a vessel are deemed to have been caused by the vessel, *Jerome B. Grubart, Inc.,* 513 U.S. at 535, 115 S.Ct. 1043, the location test is satisfied.

**B.**

To satisfy the connection test, we first must determine "whether the incident involved . . . [has] the potential to disrupt maritime commerce." *Id.* at 538, 115 S.Ct. 1043. The AFWTF range closes twice weekly to allow fishing vessels to gather their catch. Thus, the bombing activities at the AFWTF range have the potential to disrupt maritime commerce.

Next, we "must determine whether the general character of the activity giving rise to the incident shows a substantial rela-

---

3. Anderson did not counter this evidence.

4. Anderson asserts that if the aircraft was an appurtenance when it was aboard the Kennedy, it ceased to be an appurtenance upon leaving the Kennedy. *See Crotwell v. Hockman–Lewis Ltd.,* 734 F.2d 767, 768–69 (11th Cir.1984) (concluding that an air compressor that was damaged aboard a vessel was not an appurtenance when it injured a worker while it was being unloaded on land); *Kinsella v. Zim Isr. Navigation Co.,* 513 F.2d 701, 702–04 (1st Cir.1975) (holding that plywood used as dunnage to separate cargo on a vessel lost its

character as an appurtenance after it was removed from the vessel and placed over the railroad by shore-based workers); *Miller v. A/B Svenska Amerika Linien,* 454 F.2d 1094, 1095–96 (3d Cir.1971) (finding that a water bucket used for drinking was no longer an appurtenance when it was removed from the vessel and leaked, resulting in a puddle that caused an injury on land). Unlike in those cases, when Anderson's injuries occurred, the aircraft still was carrying out the Kennedy's mission. Thus, we find that the aircraft was an appurtenance when it released the bombs and injured Anderson.

tionship to traditional maritime activity." *Id.* at 534, 115 S.Ct. 1043. The "[n]avigation of boats in navigable waters" establishes a substantial relationship to traditional maritime activity. *Id.* at 540, 115 S.Ct. 1043. The Kennedy's activities include navigating the world's navigable waters and managing flight operations involving aircraft armed with ordnance to be launched at sea. Thus, the connection test is satisfied. *See id.*[5]

Anderson's injuries were caused by the Kennedy and were connected to maritime activity. Accordingly, his claim arose in admiralty and cannot be brought under the FTCA. *See* 28 U.S.C. § 2680(d).

## II.

■ Anderson filed his remaining negligence claims in admiralty under the PVA and the SAA, both of which have a two-year statute of limitations, and the EAJA. *See Wilson v. United States Gov't,* 23 F.3d 559, 561 (1st Cir.1994) ("Causes of action under both [the PVA and the SAA] may be brought only within two years after the cause of action arises" (internal quotation marks omitted)).[6] To bring suit under these acts, a plaintiff must comply with the EAJA's jurisdictional requirements by (1) filing an administrative claim with the "[f]ederal agency owning or operating the vessel causing the injury or damage"; and (2) waiting six months after filing an administrative claim to file suit against the United States. *See* 46 U.S.C. app. § 740; *see also Turner Terminals v. United States,* 177 F.2d 844, 846 (5th Cir.1949) (providing that the requirement that a claim be presented to the responsible federal agency six months before filing suit is jurisdictional).[7] In effect, the six-month requirement reduces the two-year statute of limitations to eighteen months, because the plaintiff must wait six months, but still file suit within two years. *Loeber v. Bay Tankers, Inc.,* 924 F.2d 1340, 1343 (5th Cir.1991) (per curiam).

Anderson filed his administrative claim with the United States in March of 2001, which was twenty-three months after the incident occurred and within the two-year statute of limitations. On April 10, 2001, the United States denied Anderson's claim. Subsequently, on April 18, 2001, less than one month after filing his administrative claim, but still within the two-year statute of limitations, Anderson filed suit in district court. Anderson contends that he followed the spirit of the law, if not the letter of the law, by filing his administrative claim within the statute of limitations and awaiting the government's denial before filing suit. Thus, he contends that his

---

**5.** Anderson also contends that the proximate cause of his injuries was the unsafe working environment created by the United States, the negligence of the Range Control Officer, and the negligence of the pilot. Moreover, he contends that "the *Kennedy* was nothing more than a 'fortuitous but-for' cause of [his] injuries and was not the proximate cause." Initial Br. of Appellant at 18. Assuming arguendo that these acts contributed to Anderson's injuries, "as long as one of the putative tortfeasors was engaged in traditional maritime activity the allegedly wrongful activity will 'involve' ... traditional maritime activity and will meet the second nexus prong." *Jerome B. Grubart, Inc.,* 513 U.S. at 541, 115 S.Ct. 1043. As we find that the Kennedy was engaged in traditional maritime activity, we

need not address Anderson's alternative arguments.

**6.** The distinctions between the SAA and the PVA are not relevant to this appeal, because both "apply when a plaintiff brings a public-vessel-related suit in admiralty against the United States" and both require that a plaintiff abide by the EAJA's jurisdictional requirements. *Justice v. United States,* 6 F.3d 1474, 1475 (11th Cir.1993).

**7.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

failure to comply strictly with the EAJA's filing requirements should not be fatal to his claim.

Anderson's argument mirrors the plaintiff's argument in *Pacific Bell v. United States,* 636 F.Supp. 312 (N.D.Cal.1986). In that case, the plaintiff filed an administrative claim within the two-year statute of limitations, received a denial less than two months later, and immediately filed suit. *Id.* at 313. Like Anderson, the plaintiff alleged that the six-month waiting period was impractical once the claim was denied and therefore should be ignored in such instances. *Id.* The court disagreed and granted the defendant's motion for summary judgment. *Id.* at 316.

Specifically, the court in *Pacific Bell* found "no language in ... section [740 of the EAJA] even suggesting that the waiting period does not apply once a denial of a claim has occurred." *Id.* at 314. Moreover, the court found that "[t]he interrelationship between the waiting period and the limitation period is ... consistent as the two year period merely provides an outside limit within which the action may be maintained and does not preclude the application of shorter limitation periods where appropriate." *Id.* (citations omitted) (internal quotation marks omitted). Thus, the court strictly construed the EAJA's jurisdictional requirements. *Id.* at 314–15.

We are persuaded by the reasoning in *Pacific Bell.* Thus, we find that the district court properly granted the United States's motion to dismiss with prejudice.

## CONCLUSION

Accordingly, we AFFIRM the district court's dismissal of Anderson's complaint with prejudice.