# Third District Court of Appeal

## State of Florida

Opinion filed November 18, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-2435
Lower Tribunal No. 13-8245
_____

**Marie Newell,**
Appellant,

vs.

**Carnival Cruise Lines,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Norma S. Lindsey, Judge.

Hoines, Hess & Rose, and David A. Hoines (Ft. Lauderdale), for appellant.

Mase Lara, P.A., and Richard D. Lara and Cameron W. Eubanks, for appellee.


Before SHEPHERD, ROTHENBERG and SCALES, JJ.

ROTHENBERG, J.

The plaintiff below, Maria Newell ("Newell"), appeals the trial court's order granting with prejudice the defendant's, Carnival Cruise Lines ("Carnival"), motion to dismiss Newell's negligence action based on its determination that the lawsuit should have been filed in federal court. Because the federal court has admiralty jurisdiction over the case, and because the cruise contract that governs the relationship between Carnival and Newell required that Newell file this lawsuit in the United States District Court if it had subject matter jurisdiction, the trial court correctly dismissed Newell's complaint with prejudice.

## BACKGROUND

Newell was a cruise ship passenger aboard the Carnival Imagination, which, upon completion of the cruise, returned to the Port of Miami. After exiting the ship and while walking in a restricted area in the cruise ship terminal, Newell was allegedly injured when she fell over a metal stand located on a pathway between the luggage claim and the United States Customs station. Newell sued Carnival in Florida state court, alleging that Carnival negligently maintained or created the walkway by its placement of the metal stands along the walkway.

The ticket contract between Newell and Carnival, the validity of which is not in dispute, contains a forum selection clause requiring that any prospective claims "arising under, in connection with or incident to [the ticket contract] . . . including travel to and from the vessel, shall be litigated, if at all, before the United

2

States District Court for the Southern District of Florida." The ticket contract further provides that if the federal court lacks subject matter jurisdiction, then the lawsuit must be filed in a state court located in Miami-Dade County.

Based on the allegations contained in Newell's complaint, the testimony of Carnival's supervisor of guest logistics, and the ticket contract's forum selection clause, Carnival moved to dismiss Newell's lawsuit. The trial court granted the motion and dismissed the case with prejudice. Newell appeals the trial court's dismissal order, challenging the trial court's finding that the federal court has admiralty jurisdiction over her claim.

**ANALYSIS**

The sole issue in this appeal is whether admiralty jurisdiction exists when a cruise ship passenger alleges that, as a result of the negligence of the cruise line, she was injured after exiting the ship and while walking in a restricted area of the cruise ship terminal on her way to the United States Customs station. The trial court found that admiralty jurisdiction existed because the alleged injury occurred while Newell was navigating through the disembarkation process, and therefore, it dismissed the lawsuit. We review the order of dismissal, which was based on the enforcement of Carnival's forum selection clause, de novo. Celistics, LLC v. Gonzalez, 22 So. 3d 824, 825 (Fla. 3d DCA 2009).

3

The United States Supreme Court has held that admiralty jurisdiction will be present in tort cases when two tests are satisfied: (1) the location test, which requires either that an injury occur on navigable waters or that the injury was "caused by a vessel on navigable water"; and (2) the connectivity test, which requires both that the incident had a "potentially disruptive impact on maritime commerce" and that "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dry Dock Co., 513 U.S. 527, 534 (1995) (internal quotations omitted).

A. **The Connectivity Test Was Satisfied**

Under the connectivity test, the court must examine whether the incident had a potentially disruptive impact on maritime commerce, and whether a substantial relationship existed between the activity giving rise to the incident and traditional maritime commerce. Grubart, 513 U.S. at 534. This "connectivity test" is sometimes referred to as the "nexus test." See, e.g., Bunge Corp. v. Freeport Marine Repair, Inc., 240 F.3d 919, 923-24 (11th Cir. 2001) (citing Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 253 (1972)); Lipkin v. Norwegian Cruise Line Ltd., 2015 WL 1380466, at *2 (S.D. Fla. Mar. 6, 2015).

In Lipkin, the United States District Court concluded that the "connectivity" or "nexus" test was satisfied where the plaintiff had asserted that the cruise line

4

was negligent for "allowing or directing people to disembark on wheelchairs while using the people movers without supervision." Lipkin, 2015 WL 1380466, at *3. The Lipkin court noted that "[t]he failure to provide for the safe unloading of a commercial vessel such as a cruise ship has a rather obvious potential to disrupt maritime commerce," (quoting Duck v. Royal Caribbean Cruises, Ltd., 2013 U.S. Dist. LEXIS 92974, at *7 (S.D. Fla. June 28, 2013), and that "the failure to provide a reasonably safe means of debarking, with consequent injury to a passenger, is a tort within admiralty jurisdiction" (quoting Tullis v. Fid. And Cas. Co. of N.Y., 397 F.2d 22, 23-24 (5th Cir. 1968)).

We therefore conclude that the connectivity or nexus test was satisfied in the instant case where the plaintiff alleged in the operative complaint that she sustained injuries while walking along a pathway in the cruise ship terminal on her way to clear United States Customs, and that her alleged injuries were caused by Carnival's failure to provide her with a safe walkway ("want of due and proper care of the maintenance and/or creation of the walkway . . .").

## B. The Location Test Was Satisfied

The location test is met where it is alleged that the injury occurred on navigable waters, or the injury was caused by a vessel on navigable water. Grubart, 513 U.S. at 534.

The Grubart Court interpreted the "caused by" language in the location test to essentially require "proximate causation." Id. at 536; see also Anderson v. U.S., 317 F.3d 1235, 1237 (11th Cir. 2003). In other words, the alleged injury must bear a proximate connection to a vessel on navigable water. See Doe v. Celebrity Cruises, Inc., 394 F.3d 891, 901-02 (11th Cir. 2004). Thus, the question in this case is whether Newell's injuries were proximately caused by the Carnival Imagination.

The case law interpreting and applying the location test unequivocally holds that the location test is met where it is alleged that the shipowner commits a tort before or while the ship is being unloaded, and the impact is felt on shore at a time and place not remote from the wrongful act. See, e.g., Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 210 (1963). The unloading of a ship's passengers during the disembarkation process is a part of the unloading of that vessel. See Tullis, 397 F.2d at 23-24 ("The failure to provide a reasonably safe means of debarking, with consequent injury to the passenger, is a tort within admiralty jurisdiction."); Lipkin, 2015 WL 1380466, at *2; Duck, 2013 U.S. Dist. LEXIS 92974, at *5.

The issue in this case is whether Newell's claimed injuries were sustained during the "unloading" or "disembarking" process, or, as Newell asserts, after this process had concluded. Based on the record evidence, the federal decisions specifically addressing that issue, and our recognition that the federal courts are

6

best suited to determine the parameters of their own jurisdiction, we find, as did the trial court, that Newell's alleged injuries occurred during the disembarkation process, thus satisfying the location test and federal admiralty jurisdiction.

We begin with our review of the record evidence. The record reflects that Carnival's employees participated and assisted the passengers during the unloading process that allegedly led to Newell's injury. Marie Dominique Ho-Ding-Ming ("Ho-Ding-Ming"), the supervisor of guest logistics at Carnival, testified in a deposition as follows:

> Q. I see. Well, tell me about the debarkation procedures at the completion of a cruise.
> A. Debarkation?
> Q. Right.
> A. Sure. Debarkation starts as soon as the ship docks and is cleared by Customs Borders and Protection and once we get clearance from Customs Boarders [sic] and Protection, we do have guests coming off the ship through the gangway and going down to the luggage hall and as soon as the guests are cleared by CBP, they come out of the terminal and this is basically what the debarkation process entails.
> . . . .
> Q. Who directs the passengers once the debarkation process is started by Customs clearing the vessel, who directs the passengers from the gangway into the luggage hall?
> A. Our team which is guest logistics department team, our agents.
> Q. And who directs the passengers from the luggage hall once they have gotten their luggage through these stanchions or ropes that counsel referred to?
> A. The same team which is guest logistics, Carnival logistics did.
> Q. Once the passengers cleared with the Customs agent, who directs the passengers from that point out of the terminal building?

A. Our team, guest logistics agents, uh-huh.
Q. And where does that debarkation process end?
A. The guests exit the terminal, the luggage hall.
Q. After they clear Customs?
A. After they clear Customs.
Q. All right.
A. So which is a secured and protected area, a controlled area.

Next, we address the law. In reaching the conclusion that Newell's alleged injuries occurred during the disembarkation process, we specifically rely on Lipkin, 2015 WL 1380466. In Lipkin, the passenger was injured on an electric walkway moving towards the luggage claim area within the cruise ship terminal. In evaluating the location test, the United States District Court held that the injuries occurred during the disembarkation process, that is, during the cruise ship's "unloading" of passengers "from the ship to a nearby point onshore," and thus, Lipkin's claim against Norwegian Cruise Line satisfied the location test. Id. (quoting Duck, 2013 U.S. Dist. LEXIS 92974, at *5-6). In other words, the location test was satisfied because there was a proximate causal link between the act of unloading passengers and the activities of the vessel on navigable waters.

Similarly, in Duck, 2013 U.S. Dist. LEXIS 92974, the plaintiff, who alleged negligence against a cruise line, was injured when he fell from a wheelchair while being pushed to a parking lot **outside of the cruise ship terminal** by the defendant cruise line's employee. Id. at *2-3. The court held that the location test was satisfied "when it is alleged that a shipowner's employee commits a tort while the

vessel is being unloaded, and the impact of which is felt ashore at a time and place not remote from the wrongful act." Id. at *5 (internal quotation omitted).

In the case before us, Newell claims she was injured while walking along a pathway allegedly constructed and maintained by Carnival in the cruise ship terminal at the Port of Miami prior to clearing customs, and she claims that her injuries were caused by Carnival's negligence. These facts are highly analogous to the facts in Lipkin and display a proximate causal link similar to the one found in Duck. And, importantly, if the injury sustained by the cruise ship passenger being assisted by the cruise ship's employee and who had already **exited** the terminal was found to have occurred during the disembarkation process, then it is obvious that the alleged injuries sustained by Newell would also be during the disembarkation process where her alleged injuries were sustained prior to clearing customs while in a restricted area in the ship's terminal, and Newell was still being assisted by Carnival's employees.

We, therefore, hold that the location test was satisfied and that federal admiralty jurisdiction was present in this case because Newell's claimed injury occurred during the disembarkation process. Because the ticket contract between the parties mandates that where federal admiralty jurisdiction exists, Newell was required to bring her action in United States Federal Court, and the trial court properly dismissed Newell's state court complaint with prejudice.

Affirmed.