# Third District Court of Appeal

## State of Florida

Opinion filed January 3, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-0445
Lower Tribunal No. 15-3111
_____

**Carnival Corporation,**
Appellant,

vs.

**Mirta Garcia,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Barbara Areces, Judge.

Ross and Girten, and Lauri Waldman Ross, and Theresa L. Girten; Foreman Friedman, P.A., and Jeffrey E. Foreman and Noah D. Silverman, for appellant.

Alvarez, Carbonell, Cooke, Feltman, & DaSilva, PL., and Paul B. Feltman, for appellee.

Before LOGUE, LUCK and LINDSEY, JJ.

LINDSEY, J.

Carnival Corporation appeals the trial court's denial of its motion for reconsideration of its motion to dismiss (the "motion to dismiss") which sought

dismissal of this action for improper venue. Because the federal court has admiralty jurisdiction over this action, and because the cruise contract that governs the relationship between Carnival Corporation ("Carnival") and the plaintiff below required this lawsuit to be filed in the United States District Court for the Southern District of Florida in Miami, we reverse for the reasons more fully set forth below.[1]

## I.    BACKGROUND

Mirta Garcia purchased a ticket to cruise on the M/V CARNIVAL VICTORY, a cruise ship she alleges is owned and/or operated by Carnival departing on November 7, 2013. Bold, capitalized language on the top of the "ticket contract" stated:

> **IMPORTANT NOTICE TO GUESTS THIS DOCUMENT IS A LEGALLY BINDING CONTRACT ISSUED BY CARNIVAL CRUISE LINES TO, AND ACCEPTED BY, GUEST SUBJECT TO THE IMPORTANT TERMS AND CONDITIONS APPEARING BELOW.**

---

[1] The terms "admiralty" and "maritime" are used interchangeably for purposes of this opinion as the precedents discussed herein use both terms. As noted by a leading treatise, "insofar as the reference is to substantive law, the terms 'admiralty' and 'maritime law' are virtually synonymous in this country today, though the first derives from the connection of our modern law with the system administered in a single English court, while the second makes a wider and more descriptive reference." See Weaver v. Hollywood Casino-Aurora, Inc., 255 F.3d 379, 381 n.2 (7th Cir. 2001) (citing Grant Gilmore and Charles L. Black, Jr., The Law of Admiralty § 1-1 (2d ed., 1975)); see also Aqua Log, Inc. v. Lost & Abandoned Pre-Cut Logs & Raft of Logs, 709 F.3d 1055, 1057 n.1 (11th Cir. 2013) (citing Bryan Garner, A Dictionary of Modern Legal Usage 29 (2d ed. 1995) ("The terms "admiralty" and "maritime" are "virtually synonymous." We therefore use the terms interchangeably.)).

2

**NOTICE: THE ATTENTION OF GUEST IS ESPECIALLY DIRECTED TO CLAUSES 1, 4 AND 10 THROUGH 13, WHICH CONTAIN IMPORTANT LIMITATIONS ON THE RIGHTS OF GUESTS TO ASSERT CLAIMS AGAINST CARNIVAL CRUISE LINES, THE VESSEL, THEIR AGENTS AND EMPLOYEES, AND OTHERS, INCLUDING FORUM SELECTION, ARBITRATION AND WAIVER OF JURY TRIAL FOR CERTAIN CLAIMS.**

Paragraph 13, entitled "Jurisdiction, Venue, Arbitration and Time Limits for Claims," contains the following forum selection provision:

> (c) [I]t is agreed by and between the Guest and Carnival that all disputes and matters whatsoever arising under, in connection with or incident to this Contract or the Guest's cruise, including travel to and from the vessel, shall be litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, or as to those lawsuits to which the Federal Courts of the United States lack subject matter jurisdiction, before a court located in Miami-Dade County, Florida, U.S.A. to the exclusion of the Courts of any other county, state or country.

Garcia sued Carnival in state court for injuries allegedly sustained at the Port of Miami terminal while riding on an escalator to embark on her cruise.[2] Garcia asserted jurisdiction is proper in state court under "general maritime law" and the

---

[2] Garcia initially filed this action in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, the county of Garcia's residence. The case was transferred to the Eleventh Judicial Circuit in and for Miami-Dade County, Florida on January 20, 2015, when the Fifteenth Judicial Circuit entered an order granting Garcia's motion to transfer venue. Prior to transfer, Garcia filed an amended complaint which is the operative pleading for purposes of this appeal.

3

"savings to suitors clause" of 28 U.S.C. section 1333. In her complaint, Garcia alleged she was a business invitee of Carnival and that Carnival undertook the duty to supervise, control, and direct the embarkation of its business invitees using the escalator and, specifically, that "[i]n order to board the vessel, she and a crowd of people were directed [by Carnival] to utilize an escalator leading up a ramp, the upper landing of which led to the vessel's gangway." Garcia claimed she was injured when she fell because the escalator jolted, purportedly due to "crowded conditions on board the escalator[] and a lack of crowd control," all of which Garcia attributed to negligence on the part of Carnival. Further, Garcia contended Carnival, among other things, breached its non-delegable duty to provide safe ingress and egress to the vessel by failing to provide an "appropriately designed entranceway to the M/V [CARNIVAL VICTORY]." And, Garcia alleged Carnival breached its assumed duty to supervise, control, and direct the embarkation of business invitees on board various ships including the M/V CARNIVAL VICTORY.

Carnival moved to dismiss, arguing that venue was improper because the ticket contract between Garcia and Carnival contains a forum selection clause which requires all suits for personal injuries to be filed in the United States District Court for the Southern District of Florida in Miami. In her response, Garcia asserted that the case was properly filed in state court because the United States

District Court lacked subject matter jurisdiction. After a hearing in July of 2015, the trial court entered an order denying the motion to dismiss.

In November of 2015, after this Court decided Newell v. Carnival Cruise Lines, 180 So. 3d 178 (Fla. 3d DCA 2015), Carnival moved for reconsideration of the trial court's prior order denying dismissal and for dismissal based on Newell. Over a year later, the trial court entered an order reconsidering its prior order but adhering to its initial ruling denying dismissal. The trial court found venue proper in state court in Miami-Dade County because the United States District Court lacked subject matter jurisdiction. This timely appeal follows.

## II.    JURISDICTION

This Court has jurisdiction to review non-final orders that concern venue under Florida Rule of Appellate Procedure 9.130(a)(3)(A). "This rule enables a party to seek review of an adverse decision on venue before that party is forced to litigate the entire controversy in the wrong forum." Regal Kitchens, Inc. v. O'Connor & Taylor Condo. Constr., Inc., 894 So. 2d 288, 290 (Fla. 3d DCA 2005) (quoting Mgmt. Computer Controls, Inc. v. Charles Perry Constr., Inc., 743 So. 2d 627, 630 (Fla. 1st DCA 1999)).

## III.    STANDARD OF REVIEW

As the trial court's order denying Carnival's motion to dismiss was based on the interpretation of the contractual forum selection clause, this Court's standard of

review is *de novo*. <u>Celistics, LLC v. Gonzalez</u>, 22 So. 3d 824, 825 (Fla. 3d DCA 2009).

## IV. ANALYSIS

A federal court's authority to hear cases in admiralty flows initially from the United States Constitution, which "'extend[s]' federal judicial power' to all Cases of admiralty and maritime Jurisdiction.'" <u>Jerome B. Grubart v. Great Lakes Dredge & Dock Co.</u>, 513 U.S. 527, 531 (1995) (alteration in original) (citing U.S. Const., Art. III, § 2). Section 1333 prescribes: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1).

The mandatory forum selection clause contained in the ticket contract applies to "all disputes. . . incident to this Contract or the Guest's cruise, including travel to and from the vessel" and provides for venue in the United States District Court for the Southern District of Florida in Miami for those lawsuits over which the federal court has subject matter jurisdiction. <u>See, e.g.</u>, <u>Carnival Cruise Lines v. Shute</u>, 499 U.S. 585 (1991) (finding a forum selection clause in a commercial cruise ticket contract enforceable); <u>Carnival Corp. v. Booth</u>, 946 So. 2d 1112 (Fla. 3d DCA 2006) (enforcing a forum selection clause identical to the one in the present appeal); <u>Leslie v. Carnival</u>, 22 So. 3d 561 (Fla. 3d DCA 2008) (enforcing a

6

nearly identical forum selection clause as the one in the instant appeal), aff'd by an equally divided court en banc, 22 So. 3d 567 (Fla. 3d DCA 2009), rev. denied, 44 So. 3d 1178 (Fla. 2010), cert. denied, 131 S. Ct. 1603 (2011). Thus, it follows that only in the absence of admiralty jurisdiction, will proper venue lie in a state court in Miami-Dade County.

The issue before us, then, is whether the federal court or the state court has subject matter jurisdiction. Carnival contends that our recent decision in Newell, and the cases on which we relied therein, compels reversal and dismissal.[3] 180 So. 3d 178. In response, Garcia contends Newell does not apply because the injury here occurred prior to embarkation and seeks affirmance based on Fernandez v. Ceres Marine Terminals, Inc. 2013 U.S. Dist. LEXIS 54992, at *1 (M.D. Fla. Apr. 17 2013) and Vicenzo v. Carnival Corp., 2012 U.S. Dist. LEXIS 57040, at *1 (S.D. Fla. Apr. 24, 2012).[4]

In Newell, a passenger who had just completed a Carnival cruise alleged she was injured in the Port of Miami after exiting the ship when she fell over a metal stand located on a pathway between the luggage claim area and the United States

---

[3] The terms "connectivity test" and "connection test" are used interchangeably for purposes of this opinion as the precedents discussed herein use both terms.

[4] Garcia also relies on Anderson v. United States, 317 F.3d 1235 (11th Cir. 2003). Anderson involves a suit by a contractor working at an observation post claiming injury from a bomb released by a United States aircraft carrier conducting a training exercise off shore at Vieques Island, Puerto Rico, and as such, is factually distinguishable. 317 F.3d at 1236.

Customs station. 180 So. 3d at 179. The passenger sued Carnival in state court in Miami-Dade County alleging that Carnival negligently maintained or created the walkway by its placement of the metal stands. Id. at 179-80. The ticket contract between Carnival and the passenger contained a forum selection clause requiring that any prospective clams "arising under, in connection with or incident to [the ticket contract] … including travel to and from the vessel, shall be litigated, if at all, in the United States District Court for the Southern District of Florida." Id. at 180 (alteration in original). The ticket contract further provided if the federal court lacked subject matter jurisdiction, then the lawsuit must be filed in a state court located in Miami-Dade County. Id. We framed the issue in Newell as "whether admiralty jurisdiction exists when a cruise ship passenger alleges that, as a result of the negligence of the cruise line, she was injured after exiting the ship and while walking in a restricted area of the cruise ship terminal on her way to the United States Customs station." In answering the question in the positive, we found both the location and connectivity tests were met. Id. at 180-81, 183.

In Fernandez, on which Garcia relies, a plaintiff sued Ceres Marine Terminal, Inc. ("Ceres Marine") in state court for injuries allegedly sustained when she fell on the roadway in front of the Tampa port terminal. 2013 U.S. Dist. LEXIS 54992, at *7. The plaintiff had a ticket for a cruise with Carnival Cruise Line, scheduled to depart from that port. Id. at *6. At the time of injury, the

plaintiff had stopped her car in the front of the terminal to drop off her luggage before parking to embark on the cruise. Id. at *6-7. Ceres Marine removed the case to federal court and the United States District Court for the Middle District of Florida remanded the case back to state court upon finding there was no basis to exercise admiralty jurisdiction. Id. at *1, 8. In so doing, the District Court concluded that the locality test had not been met because the incident occurred entirely on land and not on navigable waters and was not caused by a vessel on navigable waters. Id. at *8.

Similarly, in Vicenzo, on which Garcia also relied, the United States District Court for the Southern District of Florida dismissed a plaintiff's claim for negligence against Carnival Corporation for lack of admiralty jurisdiction because the location test had not been met, where a cruise ship passenger tripped and fell while stepping down a large step while exiting the port area of the terminal after departing the ship. 2012 U.S. Dist. LEXIS 57040, at *1-2, 5.

Pursuant to the Extension of Admiralty Jurisdiction Act "[t]he admiralty and maritime jurisdiction of the United States extends to and includes cases of damage or injury, to person or property, caused by a vessel on navigable water, even though the injury or damage is done or consummated on land." 46 U.S.C. App. § 30101(a)).[5] In determining whether admiralty jurisdiction exists, the United States

---

[5] Grubart cites to an earlier version of the Extension of Admiralty Jurisdiction Act, which states that "the admiralty and maritime jurisdiction of the United States shall

9

Supreme Court has held:

> [A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must assess the general features of the type of incident involved, to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.

Grubart, 513 U.S. at 534 (internal quotations omitted) (citations omitted).

## A. The Location Test

"[C]ase law interpreting and applying the location test unequivocally holds that the location test is met where it is alleged that the shipowner commits a tort before or while the ship is being unloaded, and the impact is felt on shore at a time and place not remote from the wrongful act." Newell, 180 So. 3d at 181 (citing e.g., Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 210 (1963)). The "caused

---

extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." 513 U.S. at 532 (citing 46 U.S.C. App. § 740). The court further explains that "[t]he purpose of the Act was to end concern over the sometimes confusing line between land and water, by investing admiralty with jurisdiction over 'all cases' where the injury was caused by a ship or other vessel on navigable water, even if such injury occurred on land." Grubart, 513 U.S. at 532 (citing e.g., Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 209-210 (1963); Executive Jet Aviation, Inc. v. Cleveland, 409 U.S. 249, 260 (1972)).

by" language in the location test has been interpreted to require "proximate causation." Newell, 180 So. 3d at 181 (citing Grubart, 513 U.S. at 536). In finding the location test was met in Newell, we relied on two cases involving injuries that occurred at the port terminal just after disembarkation, Lipkin v. Norwegian Cruise Line Ltd., 93 F. Supp. 3d 1311 (S.D. Fla. 2015) and Duck v. Royal Carribean Cruises, Ltd., 2013 U.S. Dist. LEXIS 92974, at *1 (S.D. Fla. June 28, 2013). In both of those cases, although the claimed injury did not occur on navigable water, the court found it nonetheless bore a proximate causation to the vessel.

In Lipkin, a passenger who was using a cane was injured after he collided with a wheelchair that got stuck at the end of a moving walkway inside the port terminal leading to the baggage claim area. 93 F. Supp. 3d at 1316. The passenger sued the cruise line in federal court claiming it was negligent for allowing or directing passengers using wheelchairs to use the moving walkway. Id. Lipkin held that the passenger's injuries occurred during the disembarkation process, that is, during the cruise ship's "unloading" of passengers "from the ship to a nearby point onshore," and thus, the passenger's claim against the cruise line satisfied the location test. Id. at 1318 (quoting Duck v. Royal Carribean Cruises, Ltd., 2013 U.S. Dist. LEXIS 92974, at *5-6 (S.D. Fla. June 28, 2013)). In other words, the Newell court explained, the location test was satisfied in Lipkin because "there

11

was a proximate causal link between the act of unloading passengers and the activities of the vessel on navigable waters." 180 So. 3d at 182.

In Duck, a passenger sued a cruise line for negligence for injuries sustained when he fell from a wheelchair while being pushed to a parking lot outside of the cruise ship terminal by the cruise line's employees. 2013 U.S. Dist. LEXIS 92974, at *2. The Duck court held that the location test was satisfied "when it is alleged that a ship owner's employee commits a tort while the vessel is being unloaded, and the impact of which is felt ashore at a time and place not remote from the wrongful act." Id. at *5. Importantly, the Duck court explained that "[a]lthough the alleged incident did not take place on a gangplank or some other place one might more readily associate with disembarkation, the Supreme Court has 'taken the expansive view of admiralty jurisdiction and has stated that in modern maritime commerce the shore is now an artificial place to draw a line.'" Id. (citing Doe v. Celebrity Cruises, Inc., 394 F.3d 891, 900 (11th Cir. 2004)). In concluding the location test was met, we reasoned in Newell that "[t]hese facts are highly analogous to the facts in *Lipkin* and display a proximate causal link similar to the one found in *Duck*." Id. at 182-83.

Here, Garcia was allegedly injured on an escalator inside the cruise terminal leading up to the ship's gangway during the process of boarding the ship. In her complaint, Garcia alleged Carnival "direct[ed] its business invitees *en masse* to use

12

the Port of Miami escalator." According to Garcia, the escalator led up to a ramp, the upper landing of which led to the vessel's gangway. It follows that the only way to board the cruise ship was to somehow rise to the level of the gangplank. Here, the escalator provided the necessary lift. As such, we find the instant facts more in line with those in <u>Lipkin</u> and <u>Duck</u> and our precedent in <u>Newell</u> than those in <u>Vicenzo</u> and <u>Fernandez</u> where the claimed injuries occurred outside the terminal in an area accessible to both ticketed passengers and non-ticketed individuals alike. Moreover, though <u>Newell</u>, <u>Vicenzo</u> and <u>Fernandez</u> all involved injuries claimed to have occurred after disembarkation, we find no distinction between embarking and disembarking for purposes of admiralty jurisdiction. Therefore, we conclude the location test is satisfied.

**B. The Connectivity Test**

Under the connectivity test, sometimes referred to as the "nexus" test, the inquiry focuses on maritime commerce. Courts look to whether the incident had a potentially disruptive impact on maritime commerce and whether a substantial relationship exists between the activity giving rise to the incident and maritime commerce. <u>Newell</u>, 180 So. 3d at 180 (citing <u>Grubart</u>, 513 U.S. at 534).

In <u>Newell</u>, this Court relied on <u>Lipkin,</u> noting that "[t]he failure to provide for the safe unloading of a commercial vessel such as a cruise ship has a rather obvious potential to disrupt maritime commerce," (quoting <u>Duck</u>, 2013 U.S. Dist.

13

LEXIS 92974, at *7), and that "the failure to provide a reasonably safe means of debarking, with consequent injury to a passenger, is a tort within admiralty jurisdiction" (quoting Tullis v. Fid. and Cas. Co. of N.Y., 397 F.2d 22, 23-24 (5th Cir. 1968)). Id. at 181 (citing Lipkin, 93 F. Supp. 3d at 1318); see also Carlisle v. Ulysses Line, Ltd., S.A., 475 So. 2d 248, 250 (Fla. 3d DCA 1985) ("[Case law] hold[s] that the duty of a common carrier extends to the point of debarkation and embarkation. . . . The cases do not, however, purport to define the limits of the duty.").[6]

In Kirk v. Holland America Line, Inc., two cruise ship passengers were injured on an escalator in the port terminal while passengers were disembarking the ship at the final port of call. 616 F. Supp. 2d 1101, 1102-03 (W.D. Wash. 2007). The passengers departed the vessel, proceeded on the vessel's gangway, then to a downward escalator, and then to baggage claim. Id. at 1103. In denying the cruise line's motion for summary judgment, the court, using a "totality of the circumstances" analysis, determined that material issues of fact existed as to the scope of duty of reasonable care during egress. Id. at 1104. The court in Kirk further stated that "any vessel which engages in the carriage of passengers for hire has a duty to provide for embarking and disembarking at the beginning and end of

---

[6] The terms "debarking" and "disembarking" are synonyms and are used interchangeably for purposes of this opinion as the precedents discussed herein use both terms.

the voyage." Id. (citation omitted). Moreover, the court declined to establish a rigid rule that leaving the gangway is, as a matter of law, the endpoint of a carrier's duty. Id. at 1104-05.

Inasmuch, the failure to provide for the safe boarding of a cruise ship has "a potentially disruptive impact on maritime commerce" and "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." Grubart, 513 U.S. at 534 (internal quotations omitted) (citations omitted); see also Duck, 2013 U.S. Dist. LEXIS 92974, at *7 ("[I]ncidents occurring during embarkation/disembarkation can slow down the process of getting other passengers on and off the vessel and can potentially cause the vessel to depart port at a later time, causing delays."); Butler v. American Thawler Co., Inc., 887 F.2d 20, 21 (1st Cir. 1989) (finding that the boarding of a ship bears a significant relation to traditional maritime activities, as one does not normally board a ship in quite the same way one enters a building, an airplane, or a car). Thus, based on the facts alleged in Garcia's complaint and irrespective of whether she was embarking or disembarking—whether the escalator was going up or going down—we find that the connection test is satisfied.

This finding is consistent with the modern, expansive view of admiralty jurisdiction to provide for the uniform application of general maritime law. See Doe, 394 F.3d at 902 ("[T]he purpose behind the exercise of this Court's admiralty

jurisdiction is to provide for the uniform application of general maritime law. . . . Indeed, a ruling that admiralty jurisdiction did not extend literally beyond the gangplank in this case would upset the very uniformity that the Supreme Court has determined is so important for maritime activity."); Norfolk Southern Ry. v. James N. Kirby, Pty Ltd., 543 U.S. 14, 28-29 (2004) (discussing its touchstone concern for the uniformity of general maritime law); Carnival Corp. v. Carlisle, 953 So. 2d 461, 470 (Fla. 2007) ("[B]ecause this is a maritime case, this Court and the Florida district courts of appeal must adhere to the federal principles of harmony and uniformity when applying federal maritime law.").

## V.  CONCLUSION

Since the location test and connectivity tests are satisfied, we find that federal admiralty jurisdiction exists in this case.  Because the cruise contract that governed the relationship between the parties required Garcia to file her lawsuit in the United States District Court for the Southern District of Florida, the trial court erred in denying the motion to dismiss.  As such, we reverse and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.